No. 7789.

ALLEN, NUGENT & CO. VS. H. S. CHAMPLIN.

Where an attachment is taken out for the whole debt claimed by the plaintiff, a part of which only is due and exigible, the bond must be for an amount to cover the whole debt. A bond to cover only the part then due is insufficient.

The defendant in attachment has a right to have his motion to dissolve the attachment tried in a summary way.

No implication can arise against a plaintiff that he is actuated by malice in suing out a sequestration when the surrounding facts furnish good ground to the plaintiff for the belief and fear set forth in his affidavit.

A general agent, who is specially instructed by his principal to place the latter's claim against a third person in a lawyer's hands, and to take such proceedings, with or without writs and affidavits as they may deem proper, is authorized to make affidavits, and execute bonds in the principal's name in a sequestration, or attachment suit.

A defendant has no right to claim damages for an attachment of property which he himself avers he has transferred to the plaintiff. It is immaterial whether the transfer was intended as a sale, or as a security.

APPEAL from the Thirteenth Judicial District Court, parish of Tensas. *Hough*, J.

Reeves & Farrar for plaintiffs and appellees :

First—That the facts justified the belief expressed by plaintiffs in their affidavit for sequestration, and therefore malice cannot be inferred.

Second—That plaintiff in attachment cannot be held in damages for a seizure by the sheriff of property which the sheriff was not authorized by the writ to take.

Third—Defendant in attachment is not entitled to damages, on the dissolution of the attachment, when it appears by the judicial admission of defendant himself that the property attached belonged to plaintiff.

T. P. Clinton, Steele & Garrett, and Kennard, Howe & Prentiss for defendant and appellant :

First—That the rule to dissolve the attachment should have been tried summarily.  C. P. 258 ; 2 An. 498.

Second—That there was no reasonable ground for the fear and belief of plaintiff set forth in his affidavit for a sequestration, and therefore that the plaintiff was actuated by malice in taking out the writ, and is liable for vindictive, as well as actual, damages.  25 An. 269 ; 24 An. 500 ; 26 An. 258, 641 ; 28 An. 819 ; 29 An. 89 ; 30 An. 394 ; 31 An. 687.

Third—That the agent of plaintiff had no authority to make the affidavits, and execute the attachment and sequestration bonds.  5 An. 496.

Fourth—When an attachment is set aside the defendant has in all cases a right to recover attorney's fees, actual injury to property, and in a proper case, exemplary damages.  13 An. 214, 440.

The opinion of the court was delivered by

MANNING, C. J.  The plaintiffs sued the defendant on November 3, 1877, for the recovery of $1,962.55, value of supplies furnished him for the cultivation of the Holly Ridge plantation during that year, of which $303.35 were then due, and the residue would become due on 15th. of that month, and took out a sequestration.  Five days afterwards they filed a supplemental petition and prayed an attachment, which was issued on a bond for $982.

The defendant moved to dissolve the attachment on three grounds, the last of which is the insufficiency in amount of the bond.  The plaintiffs insist it is sufficient in amount, because the sum due at the time of the attachment was only $303.35, and the bond is for that sum and one half more.

The attachment was taken out for the whole debt.  It is so prayed in express terms.  The maturity of the whole was near at hand, i. e. one week after the filing of the petition for attachment.  The amount of the

bond is insufficient, Yale v. Cole, 31 Annual, 687, and the attachment should have been dissolved.

The only property seized under the attachment was six mules, six horses, blacksmith tools, 13 plows, and other farming implements. The crops were seized under the writ of sequestration—the quantity being an undivided interest in ten bales of cotton picked and housed, and in five bales in the field, and in thirty bales in the seed raised by sundry parties, and same interest in eighty acres hanging by the roots also raised by sundry parties, and in fifteen acres of corn ungathered, and an undivided one half of twelve acres of corn ungathered, and five tons of hay, all the cotton seed, and four bales cotton in the lint. The sequestered property was released on the defendant giving bond for fourteen hundred dollars, a motion to set aside the sequestration having been refused.

The defendant in his answer prays for $1000 damages for destruction of his credit and of his business—$3000 damages for loss of seventy-five bales of cotton in the field—$2,500 more for loss by reason of inability to cultivate the plantation in 1878, the stock and farming implements being held by the sheriff under the attachment—$500 for lawyers' fees—and $5000 for loss of credit, and for trouble and anxiety—in sum total twelve thousand dollars. This exaggerated estimate of damages invites a doubt of the defendant's sincerity in making it.

The first term of court held in Tensas after the seizure under these writs was in April, 1878, on the first day of which the defendant moved to dissolve the attachment and set aside the sequestration, and asked for a summary trial thereof, which the court refused except as to one of the grounds, viz, want of authority of the agent to sign the bonds. A trial was had as to that ground, and the motion sustained, and a new trial immediately granted by the judge *ex officio*. A motion for continuance had been made on same day by the plaintiffs, and was granted, so that no hearing, either of the motions, or of the merits, was had until November 1879, two years after the motions had been filed, during which time the attached property was in the hands of the sheriff, and the defendant was prevented from using it.

The defendant should have been allowed to prove in a summary way the grounds of his motion to dissolve the attachment. Code Prac. art. 258. There was no reason why he should have delayed until the next term of court claiming and having a summary trial of that issue, and it should not have been deferred when he applied for it on the first day of the term. The motive of the law is obvious. The severity of the remedy by attachment—the stringent nature of the process—and the possible consequences to ensue from its enforcement if the defendant should be compelled to await the ordinary routine of the courts

33

when their terms, as in the rural parishes, are separated by wide intervals—all suggest the propriety and even the necessity of allowing a summary trial. It often happens that the trial of these motions involves the merits to some extent, but that is no reason why the summary trial of the motions should be refused. Read v. Ware, 2 Ann. 498. Unforeseen and very serious consequences might result from such denial, and in the present instance, the defendant claims, have resulted from it.

One of the grounds for setting aside the sequestration is that the affidavit is untrue, and in the answer malice is charged in taking out the process, and for this the exemplary damages are claimed as well as those actually sustained.

It is very difficult to get at the truth in such suits as this. Factors, like the plaintiffs, whose travelling agent is looking after their country business, discover facts which produce distrust of the good faith of the planter to whom they have furnished supplies. On personal application to him for explanation, and on the expressions of solicitude touching his future intentions, he is vehement in his protestations that every pound of his cotton shall go to them; and when distrust has ripened into a conviction that foul play is preparing, and the process of the courts is set in motion to arrest the diversion of the crop, large claims for losses consequent thereon are made.

Anderson was the agent of the plaintiffs, and on reaching Tensas parish, found that Champlin had confessed judgment in favour of Peter Young for six hundred dols. with recognition of Young's privilege on his crops for supplies furnished. Champlin gave his note to Young for that sum containing the acknowledgment of the privilege on Oct. 19th. Suit was instituted and judgment confessed on same day, and the judgment signed on the 20th. What could Champlin have done better calculated to rouse suspicion of his good faith to the plaintiffs—better calculated to produce conviction of his bad faith than that. The plaintiffs had been furnishing him all the year. They had a recorded pledge of all his crops. They had transmitted accounts to him from time to time, and he had approved them. Every consideration of honour, honesty, good faith, nay even of prudence and good policy, forbade him to confess a judgment under such circumstances. The intentions of men are best shewn by their acts. He must have known what construction would inevitably be placed upon that act.

The reason given for it is that the plaintiffs would furnish no more supplies, and Young, who was a merchant at Vidalia, did furnish them, but we are looking at the act only in the aspect of its constituting ground for the plaintiffs' sequestration. Certainly it was well calculated to produce the conviction that the defendant was disposing of his crop to the prejudice of the plaintiffs.

Anderson arrived on the ground soon after this and ascertained that Champlin had shipped four bales of cotton to Abraham, Lehman & Co. for account of Peter Young, and up to that time he shipped only four bales to the plaintiffs, and even this had not reached them when the seizure was made. He found also the defendant's plantation had recently been seized by a mortgage creditor, and after examining the crop, gathered and ungathered, became satisfied that it would not cover the amount of the plaintiffs' claim. Lessees were cultivating much of it on shares, Champlin's interest being undivided, as appears from the inventory already recited. Anderson remonstrated with Champlin on October 31st. for removing any portion of the crop which was pledged to the plaintiffs, and said he would be obliged to take out writs to prevent the removal of more of it. Champlin begged him not to do so, and not to inform the plaintiffs of what had been done in the Peter Young business, and offered to pay him if he would not disclose it, and said he would replace the cotton. He also offered to receive on the place a custodian to look after the plaintiffs' interests, but they could not agree on the man. Four days afterwards the sequestration was taken out. There was good ground for the belief set forth in the affidavit.

We have not overlooked the testimony of Barrow and others in Champlin's favour. The whole evidence has been sifted. We are to determine, not what his friends and neighbours believed or thought he would do, but what the plaintiffs and their agent had a right to believe he was doing and would continue to do, judging his intentions from his acts. The interests of both planter and factor, as of men in all other relations of life, are best promoted by good faith. The law which gives to the factor a lien and pledge on the crops of the planter is as much in the interest of the one as the other. The man who lends diminishes the interest or profits of lending in the same proportion as his security increases in strength and completeness. The man who borrows finds his credit enlarged if his own integrity is beyond question, or failing that, if the law resolutely attaches inviolability to his engagement. He who advances money or furnishes supplies to make crops is fairly entitled to have the law enforced in his favour, when he acts on belief induced by a reasonable construction of the acts of his debtor. The plaintiffs so acted in this case.

As to the only remaining ground of objection, viz the want of authority in the agent, it is not well taken. It is as follows—you will please place our claims vs. H. S. Champlin in hands of an attorney in Tensas parish, La. with instructions to take such proceedings, with or without writs and affidavits, as they may deem proper.

It is awkwardly worded, but we think the intent was manifestly to

confer upon the agent power to do whatever was necessary to take such proceedings as the counsel to be selected should deem proper, and, when coupled with the fact of his accredited general agency, sufficiently warranted him to make the affidavit and execute the bond in the name of his principals.

The dissolution of the attachment would involve damages, but it appears the defendant had previously transferred to the plaintiffs all the stock and farming implements. This transfer is alleged and recited by the defendant in his answer, as evidence of the plaintiffs' malice, since they seized even what had already been transferred to them. If it were malice, and damage ensued, what complaint can the defendant make if the plaintiffs took what was their own ? It is insisted however that this transfer was made only "in order more fully to secure" the plaintiffs. This merely expresses the motive of the transfer. The fact of the transfer is alleged by the defendant, and it would seem the plaintiffs had done a supererogatory act in attaching the property transferred.

Judgment affirmed.

Rehearing refused.