(III So. 697)

No. 27658.

## HOWARD v. COYLE et al.

(Jan. 31, 1927. . Rehearing Denied Feb. 28, 1927.)

*(Syllabus by Editorial Staff.)*

1. **Fraud ⬅⟶28—Purchaser failing to record deed has no cause of action against subsequent recording purchasers unless they fraudulently prevented his recording.**

One having prior unrecorded deed to land has no legal cause of action against persons having subsequent recorded deeds, unless a clear case of fraud is shown by which prior purchaser was prevented from recording his deed.

2. **Vendor and purchaser ⬅⟶228(3), 233—Sales; unrecorded deed is void except between parties, and subsequent purchaser from record owner gets good title, though knowing of prior unrecorded deed.**

A person who takes a deed to land from the record owner gets good title even though with knowledge that another holds an unrecorded deed to the same land; such deed being legally void except as between parties thereto.

3. **Vendor and purchaser ⬅⟶233—Sales; fact that intermediate recorded deeds were simulations held not to affect rights between holders of recorded deeds and holder of unrecorded deed.**

Unless the holders of recorded deeds prevented the holder of an unrecorded one from recording his deed, the fact that intermediate recorded deeds were simulations, to conceal parties involved in second sale of same land, does not affect the absolute title of the recorded deed holders.

4. **Evidence ⬅⟶98—Where testimony was flatly contradictory, parties being equally credible, statements of one having burden of proof held not proven.**

Where statements made by plaintiff were flatly denied by defendant, there being no corroborative evidence and the parties being assumed of equal credibility, the statements must be regarded as not proven, since plaintiff had the burden of proof.

163 LA.—9

5. **Fraud ⬅⟶30—Bank director held not responsible for bank's failure to record deed as directed, where he did not personally receive deed.**

Bank director, accused by plaintiff of fraudulently preventing him from recording a deed, *held* not responsible for bank's failure to record the deed, according to plaintiff's alleged directions, where plaintiff did not deliver deed to the director personally.

6. **Set-off and counterclaim ⬅⟶24—Compensation and reconvention; rule that recovery depends on rights at inception of action applies to claim for damages in reconvention.**

The rule that the right of recovery is dependent upon the parties' rights at the inception of the action is as applicable to a claim for damages in reconvention as in a separate suit.

7. **Libel and slander ⬅⟶76—Claim in reconvention for damages for charges of fraud and conspiracy in plaintiff's petition held premature.**

Right to damages for alleged libelous allegations made in a plaintiff's petition does not accrue until the termination of the suit, and hence a claim in reconvention for charges of fraud and conspiracy made by plaintiff was *held* premature.

Appeal from Second Judicial District Court, Parish of Webster; John S. Richardson, Judge.

Suit by William Howard against R. M. Coyle and others, wherein defendants claim damages in reconvention. Judgment for defendants on plaintiff's demand and against defendants on claims in reconvention.' Plaintiff appeals. Affirmed.

L. K. Watkins, of Minden, for appellant.

Stewart & Stewart, of Minden, J. S. Atkinson, of Shreveport, and Clifford E. Hays and J. F. McInnis, both of Minden, for appellees.

THOMPSON, J. The plaintiff purchased by deed under private signature from one I. N. Greer a quarter section of land described in the petition.

The deed bears no date, but was acknowledged before a notary public on November

21, 1910. It was not recorded, however, until April 2, 1913.

The vendor, Greer, reserved to himself all of the merchantable timber on the land.

On April 25, 1912, Greer executed another deed to the land to his sister, Mrs. Ada Bayassee. This deed was recorded on May 1, 1912.

On December 10, 1912, Mrs. Bayassee sold the land to J. J. Moody.

This deed was registered December 30, 1912.

Thereafter, on February 8, 1913, Moody sold an undivided half interest in the land to R. M. Coyle, and on July 12, 1915, Moody sold an undivided half interest to C. G. Coyle. This deed was recorded July 22, 1915.

There appeared to have been an error in the description of the land in the last deed, and Moody made a correction deed in favor of the widow and heirs of C. G. Coyle on March 22, 1920.

On August 13, 1912, Greer sold all of the merchantable timber on the land to R. M. Coyle and J. J. Moody.

The timber is not an issue in this suit.

The suit is to have the deeds to the land from Greer to Mrs. Bayassee and from her to Moody and from Moody to R. M. and C. G. Coyle and the latter's heirs declared to be simulated, and, if not simulations, then that said deeds be declared to have been made in fraud of plaintiff's rights, and that plaintiff be recognized as the true owner of the land.

[1] It will be noted from the facts hereinbefore recited that the plaintiff's deed from Greer was not placed of record until after the recordation of the sale from Greer to Mrs. Bayassee, from Mrs. Bayassee to Moody, and from Moody to R. M. Coyle. From which it follows that the plaintiff has no legal cause of action against any of the defendants unless a clear case of fraud is made

out against them by which they prevented plaintiff from having his deed recorded.

[2] The law is well settled that all contracts affecting immovable property, which shall not be recorded in the parish where the property is situated, "shall be utterly null and void except between the parties thereto." McDuffie v. Walker, 125 La. 152, 51 So. 100.

And in the case of Gonsoulin v. Sparrow, 150 La. 107, 90 So. 528, the late Chief Justice Provosty, in a concurring opinion, said:

"By the decision in McDuffie v. Walker, 125 La. 152, 51 So. 100, this court settled the at one time vexed question as to whether a third person can acquire a good title from the owner of record even though knowing this owner not to be the true owner.

"That view has since been repeatedly reaffirmed."—citing a long list of cases.

In the McDuffie Case, supra, the court indicated that where it is alleged and proved that a vendor had been induced by fraudulent representations to leave his deed unrecorded and that loss had thereby resulted, such vendee would no doubt be granted relief as against the perpetrator of the fraud.

The only question therefore presented on this appeal is whether there is proof sufficient to justify the court in holding that the defendants through concerted action or misrepresentation prevented the plaintiff from recording his deed or led him in any manner to believe that his deed had been recorded.

A fair analysis of plaintiff's petition will show:

That the gravamen of plaintiff's complaint is that two of the defendants, Moody and R. M. Coyle, were partners in buying lands and timber. That Coyle was a director in the bank in which plaintiff left his deed, with instructions to the bank officials to have it recorded. That the bank officials failed and neglected to record the deed, and when the deed was called for said Coyle told plaintiff the deed had been recorded.

That Moody and Coyle knew when the land was purchased by them that plaintiff had a deed to the land, and that they caused Greer to make the sale to a party interposed with the understanding that such party should in time transfer the property to them. From all of which the plaintiff draws the inference that there was a collusion and a conspiracy between Greer, Coyle, and Moody to defraud plaintiff out of the land.

There is no allegation in the petition and no proof whatever in the record that would connect Mrs. Bayassee, C. G. Coyle, or his widow and heirs with the alleged fraud and conspiracy. So far, then, as these purchasers are concerned, they must be regarded as innocent purchasers upon the faith of the public records and without any notice whatever of a prior unrecorded deed from Greer to the plaintiff.

It is true Mrs. Bayassee and Greer each testify that Mrs. Bayassee paid nothing for the land and received nothing when she executed a deed to Moody.

[3] But the fact remains that the deed from Greer to his sister was valid in form and sufficient to transfer the property, as was likewise the deed from Mrs. Bayassee to Moody. Surely it cannot be for a moment contended that even if the two deeds mentioned were pure simulations, that such fact would affect the purchasers from Moody, when such purchasers were in no manner responsible for the failure of plaintiff, Howard, to have his deed recorded.

R. M. Coyle testified:

That he never knew Greer until he met him in the courthouse in February, 1925, and that he had never seen plaintiff, Howard, before that time. That he had never had any conversation with either Greer or Howard and that he had no knowledge whatever of any deed from Greer to Howard being left in the bank with instructions to be recorded. That he never in any manner or form at-tempted to prevent the recordation of plaintiff's deed.

J. J. Moody testified:

That in the fall of 1910 he went over the land with Mr. Howard, and that Howard told him that he owned the land. That in August, 1912, Greer came to him and proposed to sell him both land and timber. That he asked Greer if he could make a good deed, and he told him he could. He then told Greer that Howard claimed to own the land, and Greer said that Howard had nothing to do with it. That he then got Mr. Charles Roberts, an attorney at law, to examine the records, who notified him that in his opinion the title was all right. That he then wrote to Greer that if Mrs. Bayassee would sell the land at the price he mentioned to have her make the deed and send it to him, and he would close the deal. That he gave a draft on the Bank of Cotton Valley, payable to Mrs. Bayassee, and delivered it to Mr. Greer.

Moody further testified:

That he had nothing to do with the making of the deed from Greer to Mrs. Bayassee. That the deed was already made and recorded when he took the matter of buying the land up with Greer.

That Greer never told him that he had sold the land to Howard. That when he asked him about Howard claiming the land, Greer said there was nothing to it.

The only evidence opposed to that of Coyle and Moody is the testimony of Greer and Howard.

Howard testified:

That he left the deed with some person in the bank, who he thought was the cashier, to be recorded. That some time in July, 1911, he visited Cotton Valley and was taken sick. That his wife got the deed from the bank. That Moody came to see him about buying the timber, and that he told him that

he did not own the timber, that it belonged to Greer. That on this trip he saw Coyle, and while they were talking Cox, the lessee of Howard, came up and asked, "Well; did you get the deed recorded?" and Howard said, "Yes." That Coyle then spoke up and said, "Yes, it has been recorded, but it don't amount to anything."

The only thing in Howard's testimony which would affect Coyle in the least is the statement that Coyle said that Howard's deed had been recorded.

[4] This is flatly denied by Coyle, and, there being nothing to corroborate Howard, and assuming that the parties are of equal credibility and the burden of proof being on Howard, the statement must be regarded as not proven under the well-established rules of evidence.

[5] Coyle was not the cashier of the bank, did not receive the deed for the bank, and of course could not be held responsible for the failure of the bank to have the deed recorded even if the bank was charged with such duty.

In these circumstances we must conclude that Coyle cannot be held in any manner responsible for the nonregistry of the deed.

The most that can be said is that he had knowledge dehors the conveyance records that Howard claimed to own the land, and such knowledge in law is not equivalent to registry.

Mr. Greer testified:

That in the fall of 1911 Moody wrote him that he wanted to buy the land and timber, and that he replied to him that he did not own the land—that he had sold it to Howard, but that he would sell the timber. That in a second letter Moody said that he had examined the records, and that they showed that he (Greer) owned the land, and he (Moody) was anxious to buy it.

That he went to Cotton Valley about the middle of August, 1911, and met R. M. Coyle, who talked about buying the land, and that he told him he had no right to sell it,—that he had already sc'1 it.

That he was trying to get his price for the timber. That Coyle then wanted to know what Greer would take for a quitclaim deed to the land and timber. That he told him he did not know what a quitclaim meant. That Coyle then said that a quitclaim deed would only convey what interest he had in the land.

That they (meaning Coyle and Moody) said that they would give $600 for a quitclaim to the land, to which Greer replied, "All right; draw it up." That Coyle spoke up and says, "No, I don't want it fixed that way; have you got some one else that you can deed it to?" Greer then said that he had a sister in Kentucky to whom he could make the deed, and "that she will do whatever I tell her." To which Coyle replied, "That's fine."

The several deeds were thereafter passed and recorded as already noted.

If we were to give greater weight to the testimony of Greer and Howard than to that of Moody and Coyle, the case would still be with the defendants, for the simple reason that the evidence of Howard and Greer shows at most only knowledge in Moody and Coyle that Greer had sold the land to Howard and that the latter claimed the land.

This court has held that mere knowledge of the want of right on the part of the record owner to sell does not constitute such fraud as cuts down everything. Gonsoulin Case, supra.

We repeat therefore that there is no evidence whatever worthy of consideration that either Moody or Coyle induced the plaintiff to withhold his deed from record, or that would in any way make them responsible for the neglect of the bank, even if we regard it as a fact proven that Howard had instructed the bank to have the deed recorded.

In the McDuffie Case, supra, it was observed:

"But it cannot be said that one perpetrates a fraud who merely treats as utterly null and void a contract which the law in terms declares 'shall be utterly null and void.'"

So in the instant case Moody and Coyle were guilty of no fraud in law in buying the land after having had the records examined and finding that the land stood in the name of Greer, and this is true even if they had actual knowledge of the fact that there was an outstanding unrecorded title from Greer to Howard.

We think the case was correctly decided by the court below.

[6, 7] The defendants claimed damages in reconvention for the charge of fraud and conspiracy made against them in plaintiff's petition. Their demand was rejected as in case of nonsuit, and they have prayed that the claim be allowed on appeal.

In Manuel v. Deshotels, 160 La. 652, 107 So. 478, the plaintiff sued for damages for libelous allegations made in another suit then pending and undetermined, and this court held that the suit was premature:

"As general rule, plaintiff's right of recovery depends on his right at inception of action.

"Action for libel based on allegations contained in another action must await termination of such other action."

The rule is equally applicable here, for it is impossible to determine in advance of a trial whether the matters alleged in a petition constitute a libel or not. There can be no difference in this respect between a separate and independent suit and one where the demand for damages is by way of reconventional demands. The right to recover damages did not exist when the reconventional demand was filed, because the plaintiff at that time had not been given the opportunity to prove the allegations of his petition.

The judgment appealed from is affirmed.