No. 715

First Circuit

SUCCESSION OF SAVANT

(January 26, 1931. Opinion and Decree.)

Lewis J. Mayeux, of Oberlin, and A. V. Pavy, of Opelousas, attorneys for opponent, appellant.

Wm. Alex Robertson, of Opelousas, attorney for administrator, appellee.

ELLIOTT, J. A. E. Darbonne opposes the final account of Henry Roy and Onezia Zerringue Roy, husband and wife, administrators of the succession of Cecile Savant, widow in community of Cesaire Mouille, alleging that he is a creditor of the succession in amounts the total of which is $2,995.

The total assets of the estate to be paid out on the account amounts to but $2,310.

The account proposes to pay out sums not opposed amounting to $962.31, which deducted from the total assets, leaves but $1,347.31, which it is proposed to distribute among the heirs of the decedent.

The opponent prays to be placed on the account as a creditor for the total amount claimed to be due him, and that the administrators be ordered to pay over to him the said $1,347.64 as a credit on his claim pro tanto.

The appeal has been brought to this court. Our appellate jurisdiction is not questioned. We take it that the sum of $1,347.31 constitutes the amount in dispute, and have therefore decided to act on the appeal.

The record contains a motion on the part of the administrators to dismiss the opposition on the ground that it was filed too late, and on the further ground that it discloses on its face no right of action.

The minutes of the lower court do not show that this motion was ever taken up, or acted on in any way. It is not urged in the brief of the administrators, so we look on it as having been abandoned and as not before us for review.

The administrators filed the prescription of one year under the Civil Code, art. 3534,

and that of three years, Civil Code, art. 3538, against opponent's demand.

These pleas of prescription were without objection by either side, referred by the lower court to the merits.

After trial on the merits, the district judge sustained the prescriptions pleaded against opponent's demand for $405 on account of checks and cash advanced to the deceased from September 1, 1923, to December 10, 1925. The judgment does not say whether the prescription of one or three years, or both, were sustained to this part of opponent's demand.

As for the claim on account of board and lodging, the pleas of prescription were not acted on, but the claim was rejected on the ground that there was no intention on the part of opponent to claim anything from the deceased on said account during her lifetime or after her death.

Opponent has appealed.

Cesaire Mouille and Cecile Savant, his wife, lived in the town of Opelousas. He owned a piece of ground on which was situated the family residence, and a store building in which he formerly conducted a mercantile business.

The property belonged to the legal community of acquets and gains which existed between him and his wife. Mr. and Mrs. Mouille had no children born to them, but they took into their home and raised from early childhood a number of orphan children, the same as if they had been their own children. One of these children was Dorestine Mouille; she was taken by them immediately after her birth and was reared as if she had been their own child. They looked on her as if she had been their child and she regarded them as her father and mother, but she was never formally adopted. When she reached the age of 18 years, she married the opponent, A. E. Darbonne, upon which she left her home with Mr. and Mrs. Mouille in Opelousas and went to reside with her husband in the town of Oberlin.

Some four or five years after they had taken Dorestine, they also took into their home another orphan child, Claire Mouille; she was about 22 months old at the time. She was never formally adopted, but they reared her as if she had been their own child, and she looked on them as her mother and father, and on Dorestine as her sister.

Mr. Darbonne and Dorestine frequently came, after their marriage, to visit Mr. and Mrs. Mouille. Mr. Darbonne testifies that Mr. Mouille asked him, in the presence of Mrs. Mouille, to take care of his widow and Claire, telling him to be sure and keep an account of anything he spent; that he would be paid back.

Cesaire Mouille departed this life intestate in August, 1922, leaving his widow, Mrs. Mouille, who inherited, at his death, his interest in the community property. She continued to occupy the same residence in which she and her husband had formerly lived, and for income rented the store building, receiving for it from ten to twelve dollars a month. It seems from the evidence that this rent was about all the income she had, but the evidence on that subject is not clear and it may be that she had some other small means.

According to Mr. Darbonne he and his wife made it their business after the death of Mr. Mouille to assist Mrs. Mouille; she continued with Claire to keep house and manage her own affairs, but opponent and his wife helped them. Mr. Darbonne testified that she had no suf-

ficient income; that he found it necessary to assist her and did so by giving her money and checks and clothes, mostly money. When he could not come over he sent her checks. He mentions one amount of $40, evidenced by a check, which he says was used for the purpose of paying one-third of the funeral and burial expenses of Mr. Mouille. He produced 17 checks which he had sent her in the way stated. In December, 1925, Mrs. Mouille, acting on the invitation of Darbonne and wife, sold out her furniture and personal belongings in Opelousas and together with Claire came to reside with him at Oberlin. After moving from Opelousas she rented her residence and store building there, receiving for some months but $20, but most of the time $30 per month. Mr. Darbonne claims in his opposition that after the death of Mr. Mouille and while Mrs. Mouille continued to live with Claire in Opelousas, he advanced her about $15 a month, a total of $405. The checks which he produced, added up, amount to but $125, counting the one for $40 sent to assist in paying the funeral and burial expenses of Mr. Mouille. This check for $40 is allowed on the account. Only one check, that for $40 used for the purpose of paying one-third of the funeral and burial expenses of Mr. Mouille, was sent to Mrs. Mouille in 1922. In 1923 we find but two checks, for $5 each. In 1924 we find but eight, of which seven are for $5 each and one for $10. In 1925, we find but six, of which five are for $5 each and one for $10, a total of $125.

There is no evidence showing any cash given or sent to Mrs. Mouille during this time, except the parol evidence of Mr. Darbonne. Miss Claire corroborates him in a very general way; but her corroboration, while not altogether, yet it has reference almost entirely to what he did after Mrs.

Mouille and herself left Opelousas in December, 1925, and came to reside at his house in Oberlin. Mr. Mouille, he says, in asking him to take care of his widow and Claire, told him to be sure and keep an account of anything he spent; that he would be paid back. But opponent has produced no account, data, nor memoranda of any kind except checks. The general nature of his testimony on the subject of sums advanced while Mrs. Mouille and Claire lived at Opelousas appears from the following question and answer:

"Q. Can you testify as to the approximate amount of money or clothing or other things you contributed to Mrs. Mouille from 1922 to 1925?
"A. About $15 a month, at least that much."

The law looks with decided disfavor on claims of this kind, brought forward against an estate after the death of the person to whom the advances are claimed to have been made, of which there is no proof except the unsupported parol evidence of the claimant. In such cases the claim must be established with convincing certainty, and the unsupported parol evidence of the claimant is not ordinarily deemed sufficient to do so.

In this case, opponent's advances for the purpose of helping Mrs. Mouille, commencing with the check for $40, dated September 14, 1922, and continuing until December 10, 1925, at which time she went to live with him at Oberlin, as shown by the checks amounting to $125, is satisfactorily shown; but beyond that amount, the evidence is not sufficient.

The administrators contend, and the lower court held, that opponent's action for the recovery of the amounts so expended was prescribed and barred by the prescriptions urged against the claim.

On this question we differ with the lower court.

The prescription of one year, C. C., art. 3534 et seq., has no application, because Mrs. Mouille was living in her own house with Claire, and with the occasional help from opponent, was maintaining herself.

According to the evidence of Mr. Darbonne, there was no contract of loan such as the Civil Code provides for under the Book 3, title 12, called loan. The loan for consumption, art. 2910 et seq., is based on a contract of borrowing. There was no contract of borrowing, consequently the prescription of three years provided by Civil Code, art. 3538, "for the payment of money lent," has no application.

At the same time the small amounts called for by the checks, the periods of time that elapsed between them, shows that Mr. Darbonne was not maintaining Mrs. Mouille and Claire while they lived at Opelousas. The remittances sent seemed to have been sent voluntarily. The help was presumably needed and was welcome and accepted, but the remittances cannot be regarded as alimony.

We think the sums expended for the help of Mrs. Mouille, to the extent evidenced by the checks produced, represent a personal obligation on her part, the amount of which Mr. Darbonne can justly reclaim from the estate. The obligation created in the way stated constituted a quasi contract. Civil Code, arts. 2292, 2293. The obligation under a quasi contract is a personal obligation and is not prescribed except by ten years. Civil Code, art. 3544; Owen v. Holmes, 12 Rob. 148; Toledano v. Gardiner, 2 La. Ann. 779; East Baton Rouge, Police Jury of, v. John McDonogh, 10 La. Ann. 395; Sandidge v. Hunt, 40 La. Ann. 766, 5 So. 55; Succession of Moise,

107 La. 717, 31 So. 990; Lagarde v. Dabon, 155 La. 25, 98 So. 744; Roussel v. Railways Realty Co., 165 La. 536, 115 So. 742; Greenfield Box Co. v. Independence Veneer & Box Mfg. Co., 4 La. App. 690.

Plaintiff's claim for $405 was not established, except to the extent of $125, and to that extent it was not prescribed. The court rejected the entire amount claimed, which included the $40 placed on the account, which is opposed.

The judgment appealed from will be amended to the extent necessary in order to enable the opponent to recover $125 of the $405 claimed.

In regard to the other count for $1,480 for the board and lodging of Mrs. Mouille after she came to live in the residence of opponent, and that for $1,110 for board and lodging of Miss Claire Mouille at his residence in Oberlin during the same time, the prescriptions of one and of three years is urged by the administrators against these amounts; but the view we take of these demands makes it unnecessary to act on the prescriptions urged against them.

On this subject the testimony of Mr. Darbonne receives support from that of Claire, but at the same time there is no written evidence on the subject, and the law as heretofore stated looks with disfavor on claims of this kind, and the proof must be very satisfactory.

It appears that when Mrs. Mouille was invited to take up her residence with opponent, the invitation included Miss Claire —this was necessary because of the family relation. She was entirely dependent on Mrs. Mouille.

Mr. Darbonne testifies as follows:

"Q. At whose invitation did Mrs. Mouille come to live with you and your wife

in 1925 and bring with her her other foster daughter, Claire?

"A. She was complaining she was barely living and could not hardly exist on what we were giving her, so I suggested she come and live with us.

"Q. So she came to live with and brought Claire with her at your invitation and that of your wife's?

"A. Yes."

Mrs. Mouille and Claire accepted this invitation and went to live with opponent and his wife, and the evidence on the subject justifies saying that it was extended, accepted, and done just as a daughter would invite her mother and sister to come and take up their residence with her and her husband.

The evidence shows that Mrs. Mouille, at the time she went to live at Oberlin, was not in good health, was very heavy, walked with difficulty, suffered with heart trouble, and required more or less attention both day and night. She seldom left her room. During the morning before and after school, she was cared for by Claire, who occupied the room with her. But while Claire was at school Mrs. Darbonne looked after her.

The evidence shows that Mrs. Mouille has a number of relatives, a whole brother, several half brothers and sisters, and a number of nieces and nephews. She was on friendly terms with them, and each year after she broke up housekeeping she and Claire went to visit these relatives and spent with them from six weeks to two months.

The evidence further shows that Mrs. Mouille, after going to live with opponent, managed, with the rent that she monthly received from her property in Opelousas, to buy and pay for her own clothing and that of Miss Claire. She also paid her taxes, insurance, and for her medicine; in fact, she paid all her expenses and that of Miss Claire, except their board and lodging, on account of which nothing was paid.

As for the claim for nursing and attention, the evidence justifies the conclusion that Miss Claire did most of that. There was no agreement between opponent and Mrs. Mouille as to any particular amount to be paid for board and lodging, nursing, etc. Mr. Darbonne says on this subject:

"Q. Was there any agreement or understanding between you and Mrs. Mouille as to what recompense you would receive for the board and lodging which you furnished her and Miss Claire?

"A. Yes, sir.

"Q. What was the agreement?

"A. She was supposed to fix up her place so as to let Claire finish her schooling and take care of us for our trouble.

"Q. Did she ever on any occasion offer to sell her property and pay you?

"A. She had several wanting to buy the property and she had one offer of $2500 and she wanted to sell it and turn the money over to me, but I told her I thought the property was worth more than that."

In another place he says:

"Q. As a matter of fact did you and your wife not render those services to Mrs. Mouille and Claire out of love and affection to them, and out of gratitude to them and without any expectation of making a charge to her estate?

"A. I did not expect to make a charge, but I expected to get the place for compensation for what we had put out. I expected that.

"Q. What reason did you have to expect that you would get the place at Mrs. Mouille's death?

"A. She spoke several times about making a will, but she never fixed it and we never felt like asking her to go and fix it up."

Miss Claire Mouille says on this subject:

"Q. Did she (referring to Mrs. Mouille) make any agreement of any sort to compensate him (meaning Mr. Darbonne)?

Was there any understanding as to how he was going to be compensated for boarding you and her?

"A. The only thing she said was, when she died she would will this property to my foster sister and me."

The evidence shows that Mrs. Mouille had ample opportunity to make a will if she had desired to make one; but she never took it on herself to do so.

"Unequivocal words, expressive of mere intent, do not make an obligation." Civil Code, art. 1814.

The most that appears from the testimony of Dr. Darbonne and Claire is that Mrs. Mouille expressed her intention of making a will, but that did not create any obligation on her part to do so for the purpose of paying Mr. Darbonne for the board and lodging of herself and Claire. Neither did this expression on her part release Mr. and Mrs. Darbonne from their obligation, under the law, to maintain her if she was in need.

"Children are bound to maintain their father and mother * * * who are in need." Civil Code, art. 229.

"By alimony we understand what is necessary for the nourishment, lodging and support of the person who claims it." Civil Code, arts. 230, 231, 233.

Mrs. Mouille, according to Mr. Darbonne, became feeble and in need, and it was more convenient to take care of her in his own home at Oberlin than if she resided in her own home at Opelousas. So she came and made her home with them at Oberlin, and from that time on to her death they furnished her and Claire board and lodging during, say, ten months of the year, but were not put to any other expense.

In Succession of Daste, 125 La. 657, 51 So. 677, 29 L.R.A. (N.S.) 297, the court used the following language (we quote from the syllabus):

"There is a presumption that the kindly services rendered by a foster daughter to her foster father during his last illness are gratuitous, and the law will not allow recovery for such services in the absence of an express promise to pay for them, or the presence of such circumstances as will be equivalent to such a promise."

For similar holdings, see Succession of Guidry, 40 La. Ann. 671, 4 So. 893, and Succession of Brand, 162 La. 880, 111 So. 267.

The judge of the lower court, in stating his reasons for judgment, said that he was satisfied that there was no obligation on the part of Mrs. Mouille to pay opponent for board and lodging on account of herself and Claire. That it was not so intended at the time she went to live with them, and at no time during the time she lived there.

We are satisfied from all the evidence that the holding of the district judge on this subject was correct.

For these reasons the judgment appealed from, holding that the demand of A. E. Darbonne, opponent, for $405 on account of advances made to Mrs. Mouille after the death of Mr. Mouille, while she lived in Opelousas and before coming to reside with him at Oberlin, is prescribed, is annulled, avoided, and set aside, and it is now ordered, adjudged, and decreed that he recover of the said administrators of the succession of Mrs. Cecile Savant the sum of $125, the amount to include the $40 allowed on the account. And it is further ordered that the succession pay the cost of his said opposition and the cost of appeal. The judgment appealed from is in all other respects affirmed. The demands of the opponent are in all other respects refused.