160 So. 419

P. OLIVIER & SONS, Inc., v. BOARD OF COM'RS OF LAKE CHARLES HARBOR AND TERMINAL DIST. et al.

No. 32964.

March 4, 1935.

Rehearing Denied April 1, 1935.

803 804

Clement M. Moss and Gilbert H. Graham, both of Lake Charles, for appellant.

E. R. Kaufman and Pujo, Bell & Hardin, all of Lake Charles, for appellees.

BRUNOT, Justice.

This is a suit for $106,677.80, with interest thereon at the rate of 5 per cent. per annum from judicial demand and for costs, and for trial by a jury. The suit grows out of a contract which is annexed to and made a part of the petition. Defendant filed a motion for a bill of particulars which was granted, in part, and, so far as granted, it was complied with. Exceptions of no right and no cause of action

and pleas of prescription and res adjudicata were then filed, heard, and taken under advisement. In due time the following judgment was rendered:

"It is therefore, ordered, adjudged and decreed that the plea of prescription of one year be overruled; that the exceptions of no right and no cause of action be sustained; that the final judgment of the Supreme Court in the suit of P. Olivier & Son, Inc., v. Board of Commissioners of the Lake Charles Harbor & Terminal District, et al., No. 16,406 of the docket of this court, and No. 32,125 of the docket of the Supreme Court (177 La. 157, 148 So. 12) is a perpetual bar to this action, and that the plea of res adjudicata based thereon is sustained, and this suit is dismissed, at the cost of plaintiff."

The plaintiff appealed from the judgment, the case has been argued in this court, briefs have been filed, and it is now submitted for our consideration. The learned trial judge who decided this case handed down a well-reasoned opinion, which we think is as accurate and decisive of the issues raised by the pleadings as the author of this opinion can write. For that reason, and as our tribute to the memory of the lamented jurist, whose earthly career has ended, we quote, with approval, the entire opinion, and adopt it as our own:

"On Exception of No Right or Cause and Pleas of Prescription and Res Adjudicata.

"The plea of prescription of one year is based on the supposition that the action may be one sounding in tort.

"The exception of no right and no cause are founded on the theory that the contract between the parties was terminable at will by the defendant, that it was so terminated, and that damages cannot flow therefrom.

"The plea of res adjudicata is founded on the claim that the contract was inadvisable, all differences between the parties with relation thereto cognizable in one suit, and that suit No. 17406 between the same parties concluded them as to all such differences.

"The demand of the petition is for damages 'sustained as the immediate and direct consequence of the breach of said contract.' Paragraph IV.

"The breach is charged to have been motivated by the ill will of the defendant. Paragraph XLIX. Other allegations enforce the charge of bad faith.

"The Plea of Prescription of One Year.

"A tort is a private wrong, independent of contract. It is a breach of legal duty, as distinguished from a breach of conventional duty. Wrongs are classed under the three heads of contracts, torts, and crimes. For general usage this division has been found sufficient and is universally adopted. 3 Bouvier (3d Ed.) p. 3285.

"It is said in Kohn v. Town of Carrollton, 10 La. Ann. 719, and confirmed in many subsequent cases, that the allegations by a plaintiff that he has been damaged does not determine that this action is ex delicto; for damages result as well from violation of contracts as from quasi offenses. The character of the action is determined from an examination of the whole petition.

"The demand here is shown by the petition as a whole to be founded solely upon a purported violation of a contract, and the dam-

ages said to have been the immediate and direct consequence of the violation. The motive of the defendant in its alleged violation may give rise to these consequent damages, but it cannot change the character of the demand from that of a suit ex contractu. C. C. art. 1934.

"This action does not come within the class which is prescribed by one year. C. C. arts. 3534, 3536.

"The Exceptions of No Right and No Cause.

■■ "The demand is based on an alleged breach of contractual obligations, causing damage. It is urged that the rights and obligations of the parties are governed by special statutes relating to building contracts, particularly Act No. 224 of 1918, as amended by Act No. 271 of 1926, and C. C. arts. 2756 to 2771, and that these statutes permit the owner to terminate the contract at will.

"The contract was a building contract, regulated by the acts cited. The cited codal articles are specially applicable to a building contract, modifying general provisions not in accord with them. Article 2765 permits the proprietor to cancel the bargain he had made by paying the undertaker his expenses and such damages as the case may require. Other articles specially regulating building contracts do not differ in principle from those generally regulating contractual obligations. In both cases dissolution and damages may be claimed reciprocally for breach. The contract here specifically authorized termination by the owner for violation by the undertaker, and completion by the owner at the expense of the undertaker. It is apparent that such a pretended termination of the contract would not be actual, but would contemplate a com-

pletion of the work under its terms, at a charge of the undertaker, the charges to be offset pro tanto by the contract price.

"The rights and obligations of the parties would necessarily await the completion of the work and a final casting of accounts. Nor would such action be based on absolute right to 'cancel the bargain,' but could be sustained only by proof of previous violation by the undertaker. On the contrary, a termination under C. C. art. 2765, requires a complete liquidation of rights and obligations as of the date of the termination. The liquidation will of course take account of the probable profits of which the undertaker is deprived by the cancellation, as well as the expenses already incurred; but no obligation of either party to the other can thereafter arise under the contract. Wickliffe v. Cooper & Sperier, 167 La. 689, 120 So. 52, Cusachs & Co. v. Sewerage & Water Board, 116 La. 510, 40 So. 855.

"The resolution of the board of commissioners of the defendant, discharging the plaintiff from proceeding further with the work, declares him and his surety in default in their obligations, and orders the board's engineer to complete the work according to plans and specifications, keeping account of all expenditures and charging them to the contractor and his surety.

"Under this resolution, the contract was not terminated in accordance with C. C. art. 2765, but was continued according to its own terms, or modified by the owner, as in the case of Geary v. Board, 139 La. 781, 72 So. 245. If the action of the board was unauthorized, for the reason that the undertaker was not actually in default, the board committed a violation in not permitting him to

complete the work. Violation of a building contract imposes the same obligations to respond in damages that are imposed in other classes of contracts.

"The Plea of Res Adjudicata.

■■ "The parties and their qualities are identical in this cause and in No. 17406, decided on appeal by the Supreme Court under No. 32125 (P. Olivier & Sons v. Board of Com'rs, 177 La. 157, 148 So. 12). Both suits grow out of differences between the plaintiff and the defendant in the execution of a contract for the construction of docks and sheds. The issue raised by the plea of res adjudicata is whether the issues in the two suits are the same or, more specifically, whether the plaintiff presented or should have presented all his demands growing out of the contract in the former suit, and whether, therefore, he is precluded from urging any supplemental demands growing out of the same contract.

"It is well settled that a single claim, arising either in contract or in tort, cannot be divided and made the subject of several suits; and, if several suits be brought for different parts of a claim, judgment on the merits in either will bar the others. 2 A. L. R. 534; Black, vol. 2, § 734.

"And Van Fleet says (sections 69 and 79) that all breaches of one contract constitute but one cause of action, as do the damages, both present and prospective.

"But the rule is subject to exceptions in order to prevent injustice. Where the plaintiff had no knowledge or means of knowledge of the omitted claim, his ignorance will excuse him. 2 A. L. R. 534.

"It will be noted that the excusable ignorance held as varying the general rule in the long list of cases cited by 2 A. L. R. 534, supra, is universally different from the ignorance claimed by the plaintiff here; and it is requisite to determine whether the general principle can be applied here.

"In the cited cases, there was ignorance of the total quantity of goods wrongfully converted, of total quantity of goods for which a warehouse was responsible, of the total defalcations of a bank cashier, and of a steward, of many instances of infringement of a patent, of the lack of payment of certain items of which were omitted from an account stated, of the fire damage of trees which had not fully developed at the time of the first trial, of the total rentals collected by a co-tenant.

"In all of these cases the excusable ignorance relates to the results of the fault of the defendant, not to the nature of the fault, nor, therefore, to the cause of action; and in most, if not all, there was an element of fraud or concealment on the part of the defendant. In the present case, the supposed ignorance relates wholly to the cause of action, and specifically to the motives of the defendant in breaking the contract. The first suit was based on paragraph 1 of C. C. art. 1934, where the breach is not charged to have resulted from fraud or bad faith, while the present suit is based on paragraph 2 of the article, providing remedies for bad-faith breach, in addition to those stipulated in the first paragraph. In addition to this difference between the cases, the question is presented here whether the petition sufficiently alleges bad faith on the part of the defendant, and whether ignorance thereof by the plaintiff in the former suit was excusable.

"An analysis of the petition in this suit discloses that all bad-faith acts charged against the defendant were committed before the filing of the former suit, except that it is charged that, subsequent to the final judgment in that case, the defendant retained and used material which it had previously rejected as unfit; and the charge is made that this was intended at the time of the rejection, if the board lost the original suit.

"It follows that the petitioner alleges previous knowledge of all acts now charged to have been committed in bad faith, and that he possessed, or should have possessed, all evidence of bad faith at that time that he possesses now, except that the fact that the defendant subsequently utilized material which it had previously declared unfit.

"Active violation by failure to pay amounts earned by the contractor is charged; and in paragraph XV it is said that the reason for the failure was that the board's engineer refused to include in the estimate the value of creosoted material. Failure to do certain dredging, thus requiring additional driving of the piling, is charged, as well as refusal to allow for extra work, and failure to answer written demands and propositions on this and other items, particularly plaintiff's offer to replace broken piling and to submit to arbitration as to responsibility therefor. Many charges are made that the board ignored important communications from the plaintiff. The method of pulling and testing piling is set out, and charged to have been contrary to the terms of the board's resolution providing for the tests; and it is said that, despite demands, the board continuously failed to point out the particulars in which the material was defective. Inspection by the board's inspector of all material is set out, and its rejection by the board alleged to have been in bad faith. All of these acts and commissions are so alleged to show a contemptuous disregard of the plaintiff and of his rights under the contract.

"Bad faith as alleged in the petition is seen to relate entirely to defective material. The board contended that the contractor was bound to furnish sound material. All of the acts charged were based on that contention. It was found by the Supreme Court in the former case, and is not controverted by the plaintiff, that some of the material was unsound. The board was declared in error in charging the contractor with the defects; the court holding that previous inspection and acceptance by the board's inspectors protected the contractor.

"The board therefore was correct in holding that the material was unsound, and in taking legal steps to prevent construction of the works with that class of material. It was incorrect only in contending that acceptance of material by its inspectors did not release the contractor from responsibility for the defects, and as to this error of law no bad faith is charged.

"If ill will or bad faith was exhibited in the alleged contemptuous refusal of the board to consider the contractor's efforts for settlements, or for reconciliation by arbitration, the evidence of that ill will or bad faith consisted in the acts of omission of the board at the time. On the trial of this case, the same evidence would be required to determine the issue of good or bad faith. And since the plaintiff had contemporaneous knowledge of

that evidence, he cannot now plead excusable ignorance as his reason for not availing himself of it in the former case.

"But it is urged that the subsequent acts of the board in utilizing material formerly declared defective throws such light upon its conduct toward the plaintiff that he now, for the first time, finds that conduct to have been actuated by bad faith.

"The illuminating act so charged was committed one and a half years subsequent to the filing of the first suit, and some time after judgment had become final. At best it can furnish only corroboration of intent which, if plaintiff's allegations as to previous acts are taken as true, he would have been justified in charging in his original petition. And, as a matter of law, corroboration by an act so long subsequent to the charged intent would be of slight value. Particularly is this true when, as in this case, it is seen that the material, or some of it, was actually defective; that by reason of a good-faith mistake as to the law the board believed it had a right to demand its replacement by the contractor; and that many considerations, physical and financial, might justify the use of such material by the board when it should not have permitted the contractor to vary the specifications for the work.

"The conclusion is that the facts and circumstances do not justify a splitting of the contractor's cause of action for breach of contract, and that therefore the final judgment of the Supreme Court in suit No. 16406 is a bar to his action in this case.

"This conclusion is not affected by the purported reservation in the former suit to sue for further damages for the breach. The res-

ervation was not noticed by the Supreme Court, nor therefore allowed. If, as a matter of law, he had no rights to reserve, because he was not permitted to split his cause of action, the reservation could not create those rights.

"While the exception of no right and no cause are not well founded, so far as concerns the contention of the exceptors that the contract was rightfully terminated by them under the terms of the law, the plea of res adjudicata rests upon failure of the plaintiff to make a sufficient showing to justify the splitting of his cause of action. For this reason the exceptions will be sustained."

For the reasons assigned, the judgment appealed from is affirmed; costs to be paid by appellant.