HAMLIN, Justice.
 

 By written agreements, Loew’s, Inc., a distributor of motion pictures in interstate commerce and a licensor of the right to exhibit motion pictures distributed by it, granted to Don George, Inc., the alleged owner of seven theatres, the right to exhibit various motion pictures. The agreements provided for payment of either a fixed sum (known as a flat rental) or an amount determinable by a fixed or varying percentage of the gross receipts obtained from admissions to such exhibitions (known as a percentage rental), with or without a guaranty of a minimum amount; and further provided that Don George, Inc., submit to Loew’s Inc., a correct itemized statement of gross receipts for each day of exhibition of a picture at a designated theatre.
 
 [1]
 

 On February 17, 1953, Loew’s, Inc., instituted suit against Don George, Inc., for $2,500 and other unaccounted-for amounts to be determined by the trial court, alleging that these sums represented unreported and unaccounted-for percentages on gross admission receipts.
 

 In answer to plaintiff’s petition, defendant denied liability and reconvened for the sum of $1,201,585.90, treble damages for loss of earnings, alleged to have been suffered as a result of an unlawful conspiracy against reconvenor’s business. As plaintiff in reconvention, defendant further prayed for the sum of $50,000 for false and libelous statements alleged to have been made by Loew’s, Inc., in a petition filed in the United States District Court for the Western District of Louisiana on April 11, 1952 (Suit No. 3693, entitled “Loew’s, Incorporated v. Don George, Inc., and Don & Darrell George”
 
 [2]
 
 ).
 

 
 *137
 
 In charging that “as a direct and proximate cause of the operation of said unlawful agreements and conspiracy against the Reconvenor’s business, Reconvenor has been subjected to a net loss of earnings in excess of * * * $400,528.63,
 
 [3]
 
 ” Don George, Inc., relied on the findings in the case of United States v. Paramount Pictures, Inc., 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1261, wherein Loew’s, Inc., and other motion picture distributors were charged with a violation of the Sherman Act, 15 U. S.C.A. § 1 et seq. There, the defendants were found guilty of having committed unlawful conspiratorial restraints of trade in unreasonable clearances, pooling agreements, joint ownerships, formula deals, block-bookings, and discriminations.
 

 Loew’s, Inc., defendant in reconvention, filed exceptions to the jurisdiction ratione materiae and no cause or right of action to the reconventional demand.
 

 The trial court' sustained the exception to the jurisdiction, holding that the cause of action asserted by plaintiff in reconvention was purely statutory (Sherman AntiTrust and Clayton Acts, 15 U.S.C.A. § 1 et seq.) and could only be brought in courts of the United States. In sustaining the exception of no cause or right of action, it held that the demand for libel would have to await the termination of the action, supra, in the federal court.
 

 The demand in reconvention was amended so as to include the State Monopoly Act (LSA-R.S. 51:121-152). Loew’s, Inc., filed a plea of prescription, on the ground that the reconventional demand was founded in tort and therefore prescribed in one year. The then trial judge, the late Honorable James U. Galloway) sustained the plea of prescription and dismissed the reconventional demand,| stating in part:
 

 “ * * * It is our opinion first, that the action asserted by defendant in its reconventional demand is not
 
 ex contractu..
 
 As we read the reconventional demand of defendant there is no
 
 *139
 
 claim that Loew’s, Inc. breached any provision of any contract existing between the parties. As we appreciate defendant’s position his claim is based solely on his allegations that he has suffered damages as the result of a nationwide conspiracy and combination between Loew’s, Inc. and other named parties, which combinations were in restraint of trade and in violation of the Anti-trust Laws of the United States and likewise in violation of the Anti-trust Law of Louisiana in so far as said combinations and conspiracies entered into the
 
 realm
 
 of intrastate commerce. We agree with the proposition contained in Article 2315 of the Louisiana [LSA-] Civil Code, that every act of man that causes damage to another obliges him by who.se fault it happened to repair it. We do not consider that said statutes created a new right or cause of torts. The fact that said statutes authorized the recovery of treble the amount of damages proved does not affect the basic right or cause of action.
 

 “The Supreme Court of Louisiana, in the case of Lagrone v. K[ansas] C[ity] S[outhern] Railway Company, 157 La. 559, 102 So. 669, has succinctly stated what we think is the law. The Court said:
 

 “
 
 'It has never been held that the mere fact of the law imposing upon a person some duty towards the public operates to create a quasi contract between such person and each individual member of the public. And it is of the essence of a contractual obligation (contract or quasi contract) that it be due to some particular person as distinguished from the public in general.’
 

 “Certainly defendant’s reconventional demand is not based upon any alleged breach of a specific contract between these parties and the mere fact that plaintiff has violated the Anti-trust Laws and breached an obligation imposed upon it by such laws to refrain from a certain type of conduct creates no quasi contractual obligation between them. It is our opinion that the one year’s prescription applies to the reconventional demand, unless the operation of the prescription has been suspended.’/
 

 Don George, Inc., plaintiff in reconvention, then appealed to this Court from the above judgment. We reversed said judgment and remanded the case for trial on the merits (227 La. 127, 78 So.2d 534)) holding that the law did not favor the trial of cases in piecemeal, Succession of Dancie, 187 La. 628, 175 So. 418, and that where the reconventional demand is incidental to and grows out of the main demand, the two demands Í should be tried together, First Nat. Bank Bldg. Co., Limited v. Dickson & Denny, 202 La. 970, 13 So.2d 283.
 

 
 *141
 
 After the filing of numerous incidental pleas, the case was tried by a jury on its merits. The trial court
 
 [4]
 
 sustained the plea of prescription of one year as to both the main demand and the demand in reconvention. Plaintiff, Loew’s, Inc., offered no further evidence, and the trial judge excluded the evidence offered by defendant, Don George, Inc., in support of its reconventional demand. The jury was then discharged since there was no evidence before it for consideration. Final judgment by the court rejected both the main demand and the demand in reconvention.
 

 Don George, Inc., plaintiff in reconvention, appealed to this Court,j assigning the following errors:
 

 “(1) The Court erred in excluding all defendants’ evidence supporting its re-conventional demand.
 

 “(2) The Court erred in sustaining plaintiff’s ‘exception of prescription’ of one year to defendant’s demand in re-convention for damages under the Federal and State Antimonopoly Statutes.
 

 “(3) The Court erred in dismissing defendant’s demand for damages in re-convention for libelous statements plaintiff caused to be published in the local press and contained in its suit filed in the United States District Court, Western District of Louisiana.
 

 “(4) The Court erred in sustaining the plea to the jurisdiction ratione. materiae of the State Court to try a re-conventional demand for damages under the Federal Antimonopoly Statutes.”
 

 The instant matter involves only the receipts of the Glenwood Theatre, a suburban theatre owned by the defendant, Don George, Inc., in Shreveport, Louisiana; no issue is taken with the finding of the trial court that the last alleged damages encompassed by the reconvenor occurred in the year 1946 — the reconventional demand being filed on March 5, 1953.
 

 In its demand in reconvention, Don George, Inc., alleged that Loew’s, Inc., together with other film producing distributing corporations “engaged in a national conspiracy to restrain and monopolize, and have unreasonably restrained and monopolized, Interstate Trade and Commerce by the following means:
 

 “1. Price Fixing.
 

 A. Vertical
 

 B. Horizontal
 

 “2. Discriminatory and Unreasonable Clearance and Runs.
 

 “3. Pooling Agreements and Joint Ownership.
 

 “4. Formula Deals, Master Agreements and Franchises.
 

 “5. Block-Booking.
 

 “6. Discrimination on Contract Provisions.
 

 
 *143
 
 “That this conspiracy was continued on and is presently being carried on on a national scale, and your reconvenor was adversely affected and damaged in its business and property by this conspiracy, * * *.
 

 “That from 1939 to 1946 Reconvenor alleges that it could and should have profited to the extent of $61,976.00 per year had it received suitable pictures, or pictures with reasonable clearance, from all conspirators.”
 

 Initially, we shall determine whether the reconventional demand filed herein alleged a tortious injury or a breach of contract. If it alleged a tort, the prescription of one year applies;
 
 [5]
 
 whereas, an assertion of breach of contract is governed by the prescription of ten years.
 
 [6]
 

 The character of the action given by reconvenor in its petition determines the prescription. Sims v. New Orleans Ry. & Light Co., 134 La. 897, 64 So. 823. An examination of the pleadings, stated in part, supra, reflects that in the instant case, re-convenor did not sue on a written contract nor did it rely on the terms of the written agreements which form the basis of plaintiff’s action. It alleged that the operation of such agreements caused it to suffer damages.
 

 In Lagrone v. Kansas City Southern Ry. Co., 157 La. 559, 102 So. 669, 670, we said:
 

 “ * * * it has been held that where one has bound himself by special contract,
 
 i. e., has given bond,
 
 for the performance of duties otherwise imposed upon him by law, the party injured may sue upon
 
 the contract,
 
 instead of on the
 
 tort;
 
 and, if he does so, his action is not prescribed except by the prescription of 10 years. * * *
 

 “On the other hand, it has been held that where the action for damages was not upon the bond or
 
 contract,
 
 but merely upon the breach of duty
 
 as imposed by law,
 
 the damages arose ex delicto, and were extinguished by the prescription of
 
 one
 
 year. * * * ”
 

 Sims v. New Orleans Ry. & Light Co., supra [134 La. 897, 64 So. 824], held:
 

 “The decisions of this court, interpreting article 3536 of the Civil Code, hold that there must have been some infringement by the defendant either to
 
 *145
 
 the person or the property of the plaintiff in order to make the prescription therein provided for effective.
 

 “The injuries from which damages spring are generally those from injuries to persons, property, or reputation, from deceit, slander and libel, malicious prosecution, conspiracy, assault and battery, false imprisonment, seduction, trespass, conversion, infringement of patents and trade marks, damage by .animals, negligence, and offenses.”
 

 In Sizeler v. Employers’ Liability Assurance Corporation, La.App., 102 So.2d 326, 328, Writ of Certiorari denied, the able judge of the Court of Appeal stated:
 

 “There are, in certain relationships, duties imposed by law, and a failure to' perform these obligations is considered as a tort though the relationships themselves may be created by contract encompassing the same subject. The case of the common carrier furnishes us with a classic illustration. The law requires it to carry with impartiality and safety those who offer themselves as passengers. If it fails to do so, it is chargeable with a tort, which action is prescribed one year after the occurrence of the accident. Generally when merchandise is delivered to it for carriage, there is also a contract expressed or by operation of law that it will carry with impartiality and safety, and if it fails in this duty, there is a breach of contract which is prescribed ten years ■after the occurrence. [Now reduced to two years by statute, LSA-R.S. 45 :- 1100] * * *
 

 “Thus, for the breach of the general duty imposed by law because of the relationship, one type of action is initiated, and for the breach of a contract another form of action is indicated. As we have seen, the Revised Civil Code limits the time in which these two forms of actions may be instituted. * * * ” Cf. Parro v. Fifteen Oil Co., La.App., 26 So.2d 30; Oliver & Sons v. Board of Com’rs of Lake Charles, 181 La. 802, 160 So. 419.
 

 Our Anti-Trust law, LSA-R.S. 51:121-152, is similar to the federal law, and a review of the Louisiana cases arising thereunder, in which the court considered the nature of the cause of. action and the application of prescription, is as follows:
 

 “The general rule is not disputed by plaintiffs, but they contend a cause of action based on -the Sherman Law is sui generis and does not sound in tort. With this I cannot agree. In my opinion this case is identical in principle with other cases based on fraud and deceit, which have always been held to come under the general rule. * * * ” Caillouet v. American Sugar Refining Co., D.C., 250 F. 639, 640.
 

 
 *147
 
 “In response to defendants’ motion to strike, plaintiff suggests, first that Article 3536, Louisiana Civil Code, relating to the prescription of ‘offenses and quasi offenses’ in one year, does not apply to a treble damage antitrust suit since such an action is sui generis and therefore falls within Article 3544, the ten-year omnibus provision covering prescription of all personal actions not otherwise provided for in the Code. It is true that the antitrust suit is a statutory action with no exact equivalent in the common law. Consequently, the courts have experienced some difficulty in applying to it statutes of limitation which list specific types of common law actions. But the Louisiana Civil Code term, ‘offenses and quasi offenses,’ is, not a specific and exclusive, but a general term which embraces all ‘tort’ actions, including the action for ‘injury to business.’ (R.C.C., Article 2315) In federal decisions antitrust damage suits are usually described as ‘tort’'actions.
 

 “In this state’of the law it would be arbitrary and unreasonable now to exclude this ‘tort’ action from the general category of ‘offenses and quasi offenses.’ Moreover, the courts of this district and this circuit have regularly applied Article 3536 to treble damage suits under the anti-trust laws. Although the point may never have been strongly urged in these prior cases, this Court can see no reason for changing the rule, and therefore the one-year limit applies.” Delta Theaters, Inc. v. Paramount Pictures, Inc., D.C.E.D.La., 158 F.Supp. 644, 646; 5 Cir., 259 F.2d 563. See, also, Streiffer v. Seafarers Sea Chest Corporation, D.C., 162 F.Supp. 602. Cf. Don George, Inc. v. Paramount Pictures, Inc., D.C., 145 F.Supp. 523.
 

 An application of the above jurisprudence to the allegations of the reconventional demand leads to the conclusion that the demand of plaintiff in reconvention is one for damages resulting from a tort. Reconvenor, however, contends that the written agreements into* which it entered with plaintiff must be introduced in evidence to prove the facts alleged in the reconventional demand, and that these agreements have been reformed by the monopoly statutes and decisions thereunder.
 
 [7]
 
 Reconvenor argues that, “To go further, Don George, Inc., in order to establish its damage as shown by Article 78, must necessarily take each separate contract for pictures and see what it grossed, then take a contract that was legal and see ■what it grossed. The difference in what the
 
 *149
 
 illegal contract grossed as compared to [what] the legal contract grossed is our measure of damages. In other words, we are suing on the' illegal contract as corrected and reformed by law. When we do this, we are suing in ‘quasi contracts.’ ” In arguing that the damages sustained by it grew out of a contractual relationship — the AntiTrust Act forming a part of the contract— reconvenor cites the cases of McKane v. New Amsterdam Casualty Co., La.App., 199 So. 175, certiorari denied, and Johnson v. Anderson-Dunham Concrete Co., Inc., 212 La. 276, 31 So.2d 797, wherein it was held that the Workmen’s Compensation Act (Act 20 of 1914, as amended) and the Fair Labor Standards Act (29 U.S.C.A. §§ 201 to 219) formed a part of the contract of employment.
 

 Reconvenor still further contends that despite the fact that the federal courts have held that an action for damages under the Sherman Anti-Trust and Clayton Acts is founded in tort, such is not the case in Louisiana, the rights enforced depending upon the law of the origin and not of the forum.
 

 After raising the above ingenious arguments, plaintiff in reconvention contends that if its action is not based on breach of contract, it stems from a quasi-contractual relationship, i. e., defendant in reconvention cannot unjustly enrich itself at the expense of reconvenor, Article 3544, supra, applying.
 

 We find no merit in reconvenqr’s contention that its action is contractual. As stated supra, plaintiff in reconvention did not sue on a contract, nor did it rely on any alleged specific breach of the terms of a contract. Reconvenor was neither an employee nor a workman. Defendant in reconvention allegedly violated prohibitory laws, and it is untenable to argue that such a law could reform the written agreements executed between plaintiff and defendant.
 

 We now go on to a discussion as to whether or not a quasi contract is involved in this cause.
 

 Article 2293 of the LSA-Civil Code provides :
 

 “Quasi contracts are the lawful and purely voluntary act of a man, from which there results any obligation whatever to a third person, and sometimes a reciprocal obligation between the parties.”
 

 Article 2294 of the LSA-Civil Code further states:
 

 “All acts, from which there results an obligation without any agreement, in the manner expressed in the preceding article, form quasi contracts. But there are two principal kinds which give rise to them, to wit: The transaction of another’s business, and the pay: ment of a thing not due.”
 

 In City of New Orleans v. Southern Bank, 31 La.Ann. 560, 567, we held:
 

 
 *151
 
 “The distinction between damages ex delicto and ex contractu is, that the latter ensue from the breach of a special obligation, and the former from the violation of a general duty. * * * ”
 

 In Knoop v. Blaffer, 39 La.Ann. 23, 6 So. 9, 11, the above case was construed in the following language:
 

 “ * * * In City of New Orleans v. Southern Bank, 31 La.Ann. 566, the court said: ‘The marked distinction between a
 
 quasi
 
 contract and an offense or
 
 quasi
 
 offense is that the act which gives rise to a
 
 quasi
 
 contract is a lawful act, and therefore is permitted; while the act which gives rise to an offense or
 
 quasi
 
 offense is unlawful, and therefore is forbidden. * * * ”
 

 See, also, 12 Am.Jur., “Contracts,” Sec. 6, p. 502.
 

 This Court distinctly stated, in Kramer v. Freeman, 198 La. 244, 3 So.2d 609, 612, that:
 

 “It is the well settled jurisprudence of this State that the character which a plaintiff gives his pleadings and the form of his action govern the prescription applicable. See Antoine v. Franichevich, 184 La. 612, 167 So. 98, and Shepard Realty Co. v. United Shoe Stores Co., 193 La. 211, 190 So. 383. In the case at bar, the plaintiff alleges in his petition that the defendants have stolen and otherwise illegally obtained certain jewelry and cash from him and that on one occasion he was assaulted and struck by one of them. He does not, however, ask for damages in redress for the wrongs committed by the defendants (which would include the personal injuries he sustained) but, on the contrary, he prays that they be ordered to return the specific property which they abstracted from him or, in the alternative, in the event they cannot return it, that he be given judgment against them for its value. This prayer clearly indicates an election on his part to waive his right to recover for the defendants’ unlawful acts and limit his demand to a suit in quasi contract for the restitution of his property.” Cf. Succession of Fields, 222 La. 310, 62 So.2d 495; Masera v. Rosedale Inn, La.App., 1 So.2d 160; Succession of Savant, 15 La.App. 396, 132 So. 263; Burney’s Heirs v. Ludeling, 47 La.Ann. 73, 16 So. 507; Roussel v. Railways Realty Co., 165 La. 536, 115 So. 742; Greenfield Box Co. v. Independence Veneer & Box Mfg. Co., 163 La. 86, 111 So. 608; Don George, Inc. v. Paramount Pictures, Inc., D.C., 145 F.Supp. 523.
 

 Plaintiff in reconvention has not alleged that Loew’s, Inc., owed it a special obligation, nor has it prayed for the return of anything unjustly held by the defendant in reconvention. In no way or manner does the character of its petition state or allege a
 
 *153
 
 quasi contract; it simply charges that the alleged conspiracy and monopoly accompanied by price fixing damaged appellant and constituted the violation of a general duty. Reconvenor’s action is founded in tort and governed by the prescription of one year, and the judgment of the trial court sustaining the plea of prescription of one year was, therefore, correct.
 

 Having found that the reconventional demand was controlled by the prescription of one year, we conclude that the trial judge was correct in excluding all evidence which occurred at or referred to a time prior to one year before the filing of said reconventional demand.
 

 LSA-R.S. 51:132 provides:
 

 “ * * * This Section does not apply to consent judgments. Whenever any proceeding, civil or criminal, is instituted by the United States, or by this state, to restrain or punish violations of its anti-trust laws, the running of prescription of a private right of action arising under these laws and based in whole or in part on any matter complained of in the proceeding shall be suspended during the pendency of the proceeding.”
 

 Reconvenor contends that under the above section the present action has not prescribed, because of a consent decree entered after a contradictory trial and appeal, and final judgment in the case of United States v. Paramount Pictures, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260, October Term, 1947, decided May 3, 1948. There is no merit to this contention; the above section does not apply to consent decrees. At the time the reconventional demand was filed on March 5, 1953, more than a year had elapsed since the occurrence of the alleged conspiratorial acts charged, and the rendition of said final judgment on May 3, 1948.
 

 We find no merit in reconvenor’s contention that the trial judge was in error in rej ecting its demand for damages alleged to have resulted from alleged libelous statements made by Loew’s, Inc., in a proceeding it filed in the federal court, supra, against Don George, Inc., and others. We are not favored with proof of the alleged untruthfulness of the statements, nor do we have before us the final disposition of the matter.
 

 In Manuel v. Deshotels, 160 La. 652, 107 So. 478, 479, we held:
 

 “The contention of the appellees is that when a suit for damages for libel is based upon allegations contained in another suit, the second suit must await the termination of the action wherein the defamatory averments are made. We think this is correct. Wolf v. Royal Ins. Co., 130 La. 679, 58 So. 507, and authorities cited therein.” See, also, Howard v. Coyle, 163 La. 257, 111 So. 697.
 

 Robinson Mercantile Co. v. Freeman, La.App., 172 So. 797, 799, correctly stated:
 

 
 *155
 
 “It is also well settled in the jurisprudence of this state that an action for libelous statements made by a party litigant cannot be maintained until the proceeding in which such allegations are made has terminated, as the cause of action does not arise until the party making the allegations has had the opportunity of proving the truth of the allegations in the proceedings in which they are made. See Manuel v. Deshotels, 160 La. 652, 107 So. 478. And it is also well settled in our jurisprudence that an action for defamatory allegations cannot be made the basis for damages by a reconventional demand until the final termination of the main demand, and that such claim for damages are premature; that the claim for damages comes in ease only after the litigant making the charges has been given an opportunity to prove them in the suit in which they are made and has failed 'to make such proof. See Howard v. Coyle, 163 La. 257, 111 So. 697; Thompson & Co. v. Gosserand, 128 La. 1029, 55 So. 663.”
 

 ¡-’In 15 U.S.C.A. § 15 it is provided:
 

 “Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney’s fee.”
 

 In United Artists Corp. v. Ancore Amusement Corp., D.C., 91 F.Supp. 132, and Caraway v. Ford Motor Company, D.C., 144 F.Supp. 295, 296, the courts held that the above section vests the federal district courts with exclusive jurisdiction of federal anti-trust actions.
 

 “Section 15 of Title 15 U.S.C.A., vests District Courts with exclusive jurisdiction of federal antitrust actions. It was intended to provide broader and more effective relief, both substantively and procedurally, for persons and corporations injured by violations of the antitrust laws, by enlarging the remedies provided under those laws and enabling persons and corporations to-maintain suits for damages sustained as a result of violations. This right to sue granted under Section 15 is to be exercised only in a ‘district court of the United States.’ * * * ” Caraway v. Ford Motor Company, D.C., 144 F.Supp. 295.
 

 The trial court was correct in holding that it did not have jurisdiction to entertain a proceeding brought under the federal antitrust laws.
 

 For the reasons assigned, the judgment of the trial court is affirmed. |
 

 [1]
 

 . From the allegations of Articles 6 and 7 of plaintiff’s petition.
 

 [2]
 

 . “That the defendants, Don and Darrell George, placed in operation prior to the period in controversy, at some date unknown to the plaintiff, and thereafter kept in operation during the perod in controversy, a plan, design and conspiracy in which the corporate defendant joined in or about June, 1946, to defraud the plaintiff by making or causing to be made regularly to the plaintiff during the period in controversy, false and inaccurate statements of the gross admission receipts received from the exhibition of said theaters of various of the pictures distributed by the plaintiff, with the intent and purpose upon the part of the defendants of concealing from plaintiff a portion of such admission receipts derived from the exhibition of such pictures, of inducing the plaintiff to believe, accept, and rely upon such statements as true and accurate in further dealings of the plaintiff with respect to said theatres.
 

 
 *137
 
 “In or about August. * * * 1951, plaintiff discovered tlie existence of the aforesaid plan, design and conspiracy. The exact total amount of gross box office receipts actually derived from the exhibition of each of said pictures is at this time not known to the plaintiff and is peculiarly within the knowledge of defendants. Plaintiff is therefore unable at this time to state the exact amount of damages which it sustained as alleged in subdivision (a) and (b) of this paragraph.
 

 “Plaintiff is informed, believes and therefore avers that said acts of the defendant in under-reporting and misrepresenting to the plaintiff the gross admission receipts actually derived from plaintiff’s pictures as aforesaid, were wilfully, deliberately and fraudulently committed with the knowledge, purpose and intent that the plaintiff would believe and rely thereon to its loss and damage in its transactions with the defendants in connection with the exhibition of its pictures at said theaters, and with gross disregard of the rights and interests of the plaintiff, for which plaintiff is entitled to an award of exemplary or punitive damages.”
 

 [3]
 

 . Article 78, Reconventional Demand.
 

 [4]
 

 . The case was at this time heard and tried before the Honorable Henry F. Turner.
 

 [5]
 

 . “The following actions are also prescribed by one year:
 

 “That for injurious words, whether verbal or written, and that for damages caused by animals, or resulting from offenses or quasi offenses.” LSA-C.C., •Art. 3536.
 

 “The prescription mentioned in the preceding ' article runs: “ * * * from that (day) on which the injurious words, disturbance or damage were sustained.” ’’LSA-C.C., Art. 3537.
 

 [6]
 

 . “In general, all personal actions, except those before enumerated, are prescribed by ten years.” LSA-C.C., Art. 3544.
 

 [7]
 

 . “That both the Federal Antimonopoly ,. Statute and the State Antimonopoly Statute created a special duty of an exhibitor having contract relations with the produeer and imposed special obligations cannot be gainsaid." Appellant’s Brief, p. 37.