BREAUX, C. J.
Plaintiff, a member of M. F. Dunn & Bro., alleges that defendant’s answer and defense in the suit of his said firm against the defendant was defamatory and libelous.
He claims damages in consequence in the sum of $100,000.
The firm held a policy of fire insurance on his stock in trade in the sum of $2,000. It held policies in a number of other companies.
On a day in October, 1898, the property insured was destroyed by fire.
In due time thereafter, in accordance with the requirement of the policy, proof of loss was made.
*434 But all the companies in which plaintiff’s firm was insured declined to pay, with the purpose, as plaintiff alleges, of defeating the just claims of the firm of which he was a member.
After about four months had elapsed the firm represented by liquidators brought suit against the insurance companies, including the defendant, from which the firm claimed the sum of $1,919.43 as the proportion of the loss due by it, the insurance company.
The defendant, in its answer, controverted plaintiff’s allegation, and specially charged the plaintiff with having made an exaggerated and fictitious proof of loss, with having falsely sworn that the cash value of the property insured was $02,669.86, and wrongly fixed the damages thereon at $48,465.25, and with having in that way sought to obtain an amount in excess of the proportion of the loss, with having sought to destroy or do away with its books, and concealed facts material to prove loss, and with having made false and fictitious entries in its books.
Defendant’s suit remained on the docket of the district court and was not tried. The other suits brought by plaintiff against other fire insurance companies were prosecuted to final judgment; the court holding that the insured was entitled to recover judgment in the amount allowed.
After plaintiff’s suits, other than its suit against defendant company had been decided, as they had been considered as test ■suits, defendant paid the amount claimed by plaintiff on the policy in question, and the suit was not prosecuted to final determination.
It was after this payment that plaintiff in the pending suit filed an amending and supplemental petition, in which it alleged that the defendant insurance company voluntarily paid M. E. Dunn & Bro., in liquidation, the amount demanded, and that it had' thereby acknowledged the charges brought by the defendant in the answer before mentioned as “false, scandalous, infamous, defamatory and libelous, and without probable cause.” (Words of the supplemental petition.)
Defendant joined issue, controverted plaintiff’s allegation, for damages, and alleged that the answer complained of in the suit on the policy was pertinent and relevant to the subject-matter of the suit. It pleaded the good faith of its president. It pleaded, further, that the action was taken upon the advice of eminent counsel; that its president believed in the truth of the charges, and exercised the right to defend the said suit; that the allegations were absolutely privileged.
The defendant specially denied that it had taken any part in publishing any parts of the pleadings of the case that had been published, or in communicating the least information with a view of injuring plaintiff.
Defendant denied that by paying plaintiff’s claim as it did and satisfying plaintiff’s demand as made in its suit against defendant it had acknowledged (as plaintiff claims) that it had wronged the plaintiff in any way, and denied that it amounted to an admission as plaintiff contends.
Upon the foregoing stated issues the case was tried.
Plaintiff offered in evidence the answer containing the asserted libelous charges. And as his only witness (plaintiff, who is an elderly man, and who had been in business in New Orleans at the date of the trial some 40 years) testified to the great loss that he had suffered because of the charges made against him and the slanderous reports circulated by defendant, and that he had sought to re-establish himself in business, but that the loss of his credit and the refusal to issue to him policies of insurance had been the cause of his failure to reinstate himself.
On the part of the defendant, a member of a well-known law firm, who had special charge of the defense in the suit brought *436 by plaintiff’s firm on the fire insurance policy in question, testified that he had been informed by the adjusters, Messrs. W. G-. Lyman and W. A. Cools, that they were meeting with some difficulty on account of the refusal of the firm to let them refer to the books.
Counsel testified that he then applied himself through these adjusters to obtaining information bearing upon plaintiff’s claim, and that after some time and considerable investigation he advised his client, the defendant, to put up the defense which is alleged in the answer, and which was introduced in evidence, as before mentioned. He testified that he had full confidence in the defense, and that despite his advice he found his client disinclined to make the charges which might not be sustained, and. it was only after he had explained the whole case with particularity, as he understood it, that his client consented to make the allegation contained in the answer. ,
He added, also, that he had devoted greater attention to the preparation of the defense than usual.
The president of the insurance company also testified that the report of the adjusters of the company led him to believe that it was a matter of duty to contest the claim.
He said that he had read the answer and asked the counsel whether there was any allegation in the answer not correct in law, and that counsel assured him that there was not.
The president and secretary of the company, as witnesses, said that they had had nothing to do with publishing anything relating to the case and had written no letter in regard to it, and that it was not true, as charged, that the company had taken part in any such publication or in thus seeking to injure the plaintiff.
It is also in evidence that in adjusting, or attempting to adjust, the loss of plaintiff, irritation and anger arose between the parties. One evidently was bent upon obtaining everything he claimed, while the other was equally as anxious to defeat the claim.
It is not an infrequent occurrence that insured and insurer will fall out when it becomes necessary to adjust losses.
It is also in evidence that plaintiff was-not entirely willing to submit his books, and that he claimed certain items of property which defendant thought was unfair, fictitious, and fraudulent.
Judgment—The Issues Were Pertinent to-the Merits.
We have not found reason to hold that the defense in the original suit by plaintiff, M. F. Dunn & Co., was not pertinent to the issue.
If fraud had been committed, and if the president of the fire insurance company reasonably believed that fraud had been committed, and if he had been led to believe-that the books of plaintiff did not represent the true condition of his business, it was pertinent to allege, as he did in his answer, in' order that he might introduce evidence to sustain the charge.
The allegations of the answer bore upon-the questions at issue.
These questions could not have been proven, if there was any .ground for raising them, without sufficient allegation for their admission.
The allegations were directed in good faith to the end proposed, and under circumstances which rendered them pertinent to the occasion.
They do not seem to have been prompted by personal ill will or anger toward the plaintiff.
The evidence- admissible under the allegations of the answer, if that evidence had been such as the defendant had a right to expect, was relevant to every issue of fact contested before the court.
*438 Was there a probable cause? Is the next question before us.
Considered from defendant’s point of view, it was necessary to ascertain whether plaintiff had suffered the loss he claimed.
Defendant, having arrived at the conclusion that the loss was exaggerated and the claim an unfair one, committed no actionable wrong in concluding in so far as he could to open wide the door to a general inquiry in accordance with the advice of his counsel.
It must be borne in mind that this counsel had been employed from the first, and that during a considerable time had examined into the issues.
However much mistaken, the defendant was, the circumstances did east suspicion on the plaintiff.
Had the defendant been in bad faith, or if it had been shown that he was aware that these suspicions were without foundation, he would be liable in damages, for in that case the facts would not have afforded ground for the allegation.
On an occasion such as is shown by the evidence, without proof of some malice, it would be difficult to hold that the allegations are actionable and that damages are due.
In the situation in which the president of the company was placed there was reason for him to believe in the probability of the cause which he alleged.
It must be remembered that there was a decided difference between the parties about the value of the property, its identity and the right of plaintiff to recover at all, and there were other grounds of differences.
Article 2315 of the Civil Code is invoked by the plaintiff.
While the importance of observing its spirit cannot be overestimated, none the less, in the nature of things, averments in judicial proceedings that are pertinent to the issue, made without malice, are protected.
The article cited is intended to protect personal rights, while the rule in question is intended to protect the interest of the public. It is the trend of all jurisprudence to admit the rule: the privilege.
There is a corresponding article in the French civil law, and yet in France the-“privilege” in question is recognized.
In England, although the law’s purpose is to afford' a remedy for every right, yet it is held that averments in judicial proceedings are protected for the common convenience- and the welfare of society,’ in order that men should not be deterred from taking their remedy by due course of law.
In an. English decision it is stated that the-original of the rule was the great mischief that would result if witnesses in courts of' justice were not permitted to speak freely, subject to the animadversion of the court. Henderson v. Brownhead, 4 Hulsturn and Norman’s Reports, 557, 579.
In the Supreme Court of the United States, as well as in the courts of all the states, “privileged averments” are recognized in judicial proceedings.
We have carefully reviewed the decisions; of our own state which our researches have-enabled us to find. In the first to which we shall refer it was decided that statements-are privileged when pertinent to the issue. Burke v. Ryan, 36 La. Ann. 951.
In another case the same rule was sustained, and it was, in addition, stated that the failure to succeed is not evidence of malice, presenting on that point precisely one of the issues which is involved in the-pending case. Vinas v. Insurance Company, 33 La. Ann. 1267.
In another decision, still on the same point, it is held that a charge of fraud made in good faith, upon reasonable ground without malice, sustained by surrounding circumstances, apparently justified by recent acts of the parties to whom fraud is imputed, is- *440 privileged. Clement Brothers v. Creditors, 37 La. Ann. 693.
A question of privilege was invoked in Gardemal v. McWilliams, 43 La. Ann. 457, 9 South. 106, 26 Am. St. Rep. 195. It was sustained.
The administration of justice, it was.said in Terry v. Fellows, 21 La. Ann. 376, requires it.
There are other decisions not directly in point in which the question of “privilege” was considered; as for instance, in one case, the defendant had taken the oath in a judicial proceeding. The court substantially said that, as malice had not been shown, there was no ground for a criminal prosecution for perjury. Wamack v. Kemp, 6 Mart. (N. S.) 477.
Another decision, although not directly pertinent, has bearing. The court held in ■substance that the occasion presented the inference of malice. The step taken was an exigency in the cause of judicial proceedings. See, also, upon the subject Allen, Nugent & Company Case, 32 La. Ann. 511; Morancy v. Clare, 6 La. Ann. 178; Pellenz v. Bullerdieck, 13 La. Ann. 274; Osborne v. Moore, 12 La. Ann. 714; Grant v. Deuel, 3 Rob. 17, 38 Am. Dec. 228; Escurix v. Daboval, 13 La. 89; Ryder v. Adams, 5 La. 318; Maloney v. Doane, 15 La. 278, 35 Am. Dec. 204.
We do not feel inclined to set aside the well-established rule, although it may work hardship in particular cases.
A” vast field of litigation would be opened .should this court hold that nothing is privileged in judicial proceedings.
We do not wish to be understood as belittling the complaint of any one.
But there are charges of a personal character which must be left to the protection which may be found in the moral law or responsive public opinion. They cannot be remedied in a civil suit for damages.
It is therefore ordered, adjudged, and decreed that the judgment be, and it is, affirmed.
PROYOSTT, J., concurs in the decree.