266 So.2d 732 (1972)
Mrs. Iris BOSCH, wife of and Raul J. VIERA
v.
KWIK HOME SERVICES, INC., et al.
No. 5016.
Court of Appeal of Louisiana, Fourth Circuit.
July 18, 1972.
Rehearing Denied October 11, 1972.
Writ Refused November 16, 1972.
Satterlee & Mestayer (Louis B. Trenchard, III), New Orleans, for relator.
Pierre F. Gaudin, Gretna, Donald A. Meyer, David Duggins, New Orleans, for respondents.
Before LEMMON, GULOTTA and BOUTALL, JJ.
LEMMON, Judge.
Mr. and Mrs. Raul J. Viera filed a petition for breach of contract and for damages *733 against Kwik Home Services, Inc., a business corporation, and certain individual defendants who were alleged to be the managing agents and/or principal stockholders of the corporation.
The petition alleged that pursuant to a written contract the defendant corporation had undertaken to perform certain remodeling work on the Viera residence, but that although the Vieras had paid to defendants an amount in excess of the maximum contract price, defendants had not paid material suppliers, sub-contractors and laborers, who had filed liens against the Viera property. The petition further alleged that the funds were misapplied and/or misappropriated by one or more of the defendants with the actual or constructive knowledge or with the acquiescence of the other defendants.
The defendants answered with a general denial, and the individual defendants filed reconventional demands based on the allegedly libelous statements made by the Vieras in their petition.
The Vieras lodged exceptions of no cause of action to the reconventional demands on the grounds that no final determination of the suit had been made.
When the trial court overruled the exceptions, the Vieras applied for a writ of certiorari to this court.
We granted the writ because the ruling of the trial court was in conflict with prior jurisprudence. See e. g., Udell v. Ascot Oils Inc., 177 So.2d 178 (La.App. 2 Cir. 1965); Manuel v. Deshotels, 160 La. 652, 107 So. 478 (1926); W. B. Thompson & Co. v. Gosserand, 128 La. 1029, 55 So. 663 (1911).
The Thompson case reached the Supreme Court on a writ application after the district court overruled an exception of no cause of action to a reconventional demand for damages based on alleged libel in the plaintiff's pleadings. The court held:
"It is well settled that a cause of action for damages for malicious prosecution does not come into existence until the termination of the prosecution; the theory being that the prosecution may terminate unfavorably to the plaintiff claiming damages therefrom, in which event the court would have uselessly given time to the admeasurement of the plaintiff's damages. We have decided in the recent cases of Lescale v. Schwartz, 116 La. 293, 40 So. 708, and of Lebovitch v. [Joseph] Levy [& Bros. Co.] (decided April 10, 1911) 128 La. 518, 54 So. 978, that such rule also applies to libel cases springing from civil proceedings. Davis v. Stuart, 47 La.Ann. 378, 16 So. 871; * * *" (Emphasis supplied).
The court was seriously concerned about Articles 375 and 377 of the Code of Practice then in effect, regarding demands in reconvention against a plaintiff domiciled in a different parish from the defendant, and stated:
"To give articles 375 and 377 the effect claimed for them here would force a plaintiff, made defendant in reconvention, to defend, out of its natural sequence, a claim which may never have existence."
The Court was also concerned with the time and effort devoted to measuring damages for libel, which would be wasted if the original litigation terminated unfavorably to the party alleging libel.
In the Manuel case a separate suit brought to recover damages for an allegedly libelous statement in a previous petition was dismissed on an exception of no cause of action. The Supreme Court stated that the right of recovery depends upon plaintiff's right at the inception of the suit and "plaintiff's cause of action will not accrue unless and until it be established on the trial of the suit wherein the pleading containing the defamatory language is filed that said averments are false, and that defendants knew them to be false, or had not just and probable cause to believe them to be true." (Emphasis supplied.)
The Udell case is the only cited case which was decided after the adoption of the *734 Code of Civil Procedure. In that case it was argued that the rule set forth in the prior cases no longer prevailed since the adoption of C.C.P. arts. 1038 and 1061[1]. The court held that the Code of Civil Procedure was not intended to create causes of action where none existed, and therefore ordered that the exception of no cause of action to the reconventional demand be maintained.
We disagree with our colleagues of the Second Circuit. In the early cases the court applied to libel actions the rule prevailing in malicious prosecution cases that a person cannot bring such an action until the original proceeding has terminated in his favor. But the actions for malicious prosecution of a civil case and for libel are entirely different. Malicious prosecution, in a civil case, is the malicious commencement or continuance of a suit, without probable cause, for the purpose of harassment; libel is a malicious publication of a statement tending to harm a person's reputation. Libel can be committed in many forms, only one of which is by statements made in pleadings in judicial proceedings.
One reason for the rule that a person cannot bring an action for malicious prosecution until the original proceeding has terminated in his favor is that courts cannot tolerate inconsistent judgments on the same question between substantially the same parties.[2] If the original civil suit is decided in favor of the original plaintiff, the action for malicious prosecution necessarily falls. But the same reasoning does not necessarily obtain in actions for libel based on statements made in judicial proceedings. In the latter situation the statement can in fact be libelous, while the party who made the statement can still prevail on the merits of the original suit, particularly if the libelous statement concerned immaterial matters. Furthermore, if the defamatory averments are immaterial, it is not necessary in the original suit to pass on their truthfulness.
In most other jurisdictions a statement made by parties or their attorneys in judicial proceedings is absolutely privileged, and the issue of this case therefore never arises. But in Louisiana parties and their attorneys enjoy only a qualified privilege, subject to the requirement that statements made by them in judicial proceedings must be material and must be made without malice and with probable cause.[3] Therefore, the problem can and does arise in this state.
In the earlier cases the courts were concerned about procedural problems regarding jurisdiction over reconventional demands and the sequence of trial of the claims asserted by the main demand and the reconventional demand. They further preferred to determine whether or not a libel had in fact been committed prior to requiring evidence on damages incurred as a result of the libel. To circumvent these problems, the courts created a legal fiction and judicially deferred the accrual of the cause of action, following the rule prevailing *735 in malicious prosecution actions, rather than the general rule that a cause of action for libel accrues immediately upon publication of the libelous statement.[4]
When the question of prescription arose, the courts perpetuated the fiction by holding that the libelous words are held in abeyance until it is ascertained upon the judgment in the case that the words are injurious, at which point prescription on the action for damages begins to run, since that prescription relates to action for injurious words.[5] (We might inquire at this juncture as to whether a court following this rationale would allow damages for libel from the date of the filing of the original petition containing the libel, when the damages actually began to accrue, or from the time that the cause of action fictionally came into being after being held in abeyance.)
However, while this fiction served a useful purpose when it was conceived, it is no longer necessary since procedural vehicles are now available to properly handle the problems which bothered the earlier courts, at least in this case where the cause of action is stated in a reconventional demand. Connexity between the principal and reconventional demands is no longer required, irrespective of the domicile of the parties. C.C.P. art. 1061. And the trial judge can order separate trials and render separate judgments on the principal and the incidental actions, if it appears that orderly procedure and fairness would best be achieved by separate trials. C.C.P. art. 1038.
Furthermore, when a party defendant has in fact been damaged by a libelous statement, it is unfair to tell him that his claim for damages does not yet exist, although he is already suffering the damages which he seeks to recover.
We do not believe that the possibility of future procedural difficulties should prevent one against whom an allegedly libelous statement has been made from asserting a remedy for the damages that he is presently suffering. To do so would be to deny the person an open court without delay for injury done him in his rights and reputation in contravention of Const. Art. 1, § 6.
However, we do find that the reconventional demands in this case have failed to state a cause of action in another respect. Since the reconventional demands do not allege that the libelous statements in the petition were immaterial and made without probable cause and with malice, a cause of action for libel has not been stated. However, since these grounds for the peremptory exception can be removed by amendment of the petition in reconvention, we hereby order that the pleadings be amended within ten days from the date that this judgment becomes final. Upon failure to comply with this order, the reconventional demand shall be dismissed.
Accordingly, the judgment of the trial court is set aside, and the case is remanded for further proceedings consistent with this opinion. The assessment of costs will await final disposition of the case.
Set aside and remanded.
BOUTALL, Judge (concurring in part, dissenting in part).
I concur in that portion of the majority opinion maintaining the exception of no cause of action. However, I disagree with the holding that a cause of action arises prior to the disposition of the main demand. Because of the different basis for maintaining the exception, the result reached by the majority is the setting aside of the judgment appealed from and a remand to *736 amend, rather than the reversal of the judgment and dismissal of the reconventional demand, which would result from a holding in accordance with Udell, Inc. v. Ascot Oils, Inc., 177 So.2d 178 (La.App. 2nd Cir., 1965).
In view of the fact that it is still possible that the trial judge could reach a similar result in this suit by granting separate trials of the main demand and the reconventional demand, and then, after disposition of the main demand, make proper provisions for disposition of the reconventional demand, I would agree with the majority, since the matter comes before us on writs, not on appeal, to the extent that our Code of Civil Procedure seems to have set up a possible procedural method of handling the issue before us in this particular case, dealing with a reconventional demand only. I note, however, there is nothing in the judgment of the trial court on the record of this case to indicate that a separate trial will be had of the main demand first and then the reconventional demand after disposition of the main demand. In fact the ruling of the trial judge on the exception of no cause of action indicates the opposite result, and the ruling of this Court would permit it.
Thus it may be that the ordered remand may achieve a proper final result. Nevertheless, I believe that orderly procedure demands reversal of the ruling on the exception because it is in conflict with the present law as set out in the Udell case, supra.
It has been well settled since the case of W. B. Thompson & Co. v. Gosserand, 128 La. 1029, 55 So. 663 (1911), that a cause of action for damages due to libelous statements arising out of the proceedings themselves does not come into existence until the termination of the proceedings. This principle has been adhered to by the Supreme Court in the case of Manuel v. Deshotels, 160 La. 652, 107 So. 478 (1926) and lately in the case of Loew's Incorporated v. Don George, Inc., 237 La. 132, 110 So.2d 553 (1959). It is being applied without variance by the Courts of Appeal. Thomas v. Mobley, 118 So.2d 476 (La.App. 1st Cir., 1960); Udell, Inc. v. Ascot Oils, Inc., supra.
The pronouncements of the courts in those cases make it clear that the question involved herein is not one of simple prematurity, such that, in this case, the trial judge is not able to wait the outcome of a possible first trial and then proceed to a second trial, the prematurity being cured. Rather the holdings are consistent that it is an essential ingredient to the cause of action that there be a termination of the case in which the allegedly libelous statements appear, and the reconventional demand cannot state a cause of action at this time.
The actions of the courts previously considering an issue similar to that arising in this case show that the applicant for writs here is entitled to relief at this stage of the proceedings. A writ of prohibition was issued by the Supreme Court in the Thompson case, supra. In the Manuel case, supra, an exception of no right or cause of action dismissing the suit was affirmed. In the Thomas case, supra, the Court of Appeal maintained an exception of no cause of action filed for the first time in that court pending an appeal from a jury trial. In the Udell case, supra, the Court of Appeal issued writs of certiorari, mandamus and prohibition and reversed a judgment of the trial court overruling an exception of no right or cause of action, precisely as is the status of this case.
I cannot agree that the application of the well settled principles of law to this case would serve to deny the defendant an open court to redress his alleged injuries in contravention of Article 1, § 6 of the Louisiana Constitution. Instead, I am of the opinion that failure to apply them will serve to deny the plaintiff of his opportunity to seek redress without unreasonable delay under the provisions of that article. The underlying reasons for the adoption of the basic principle are just as valid today as they were in 1911.
*737 Reference to the case of W. B. Thompson & Co. v. Gosserand, supra, clearly shows that one purpose of that holding was to bring the law relative to libel cases springing from civil proceedings into consistency with the law relative to actions for damages for malicious prosecution in criminal matters. The rationale is not to permit a person to make libelous statements against another with impunity, either by way of pleadings in civil proceedings or by affidavits in criminal proceedings, but to provide an orderly procedure whereby the person so declaring is first given an opportunity to assert the proof of his statements and establish his claim without first being forced to defend "the accusations he makes, together with an issue of damages that may never arise. As long as we require a plaintiff to specifically plead fraud, theft, etc., and the facts which constitute it, we must grant him the opportunity to establish the proof thereof unencumbered by the necessity of defending himself before he has a chance to be heard.
It is proposed that C.C.P. art. 1038 and C.C.P. art. 1061 offer a modern solution to that problem. However, it is only a partial solution at best. It cannot afford a solution where a separate suit is filed rather than a reconventional demand. See, for example, Loew's Incorporated v. Don George, Inc., supra, and Manuel v. Deshotels, supra. To have one rule applying to the arising of a cause of action in reconventional demands and another applying to separate suits would be to destroy the consistency that has already been created in our law and create confusion. Additionally, the determination of the question of materiality and malice as required by the majority often can be made only after trial on the merits.
I quite agree with the analysis of the court in the Udell case that those articles of the Code of Civil Procedure are concerned with procedure only and cannot serve to create a cause of action where none exists under substantive laws. The majority opinion would alter those substantive laws.
I respectfully dissent.

ON APPLICATION FOR REHEARING PER CURIAM.
In their application for rehearing relators argue that a plaintiff, required by our system of fact pleading to assert all of the relevant facts which give rise to his cause of action, should be allowed to prove these facts before they can form the basis of an action for libel. Otherwise, the possibility of a reconventional demand for libel will dissuade a plaintiff from bringing a small, but valid, claim.
This argument fails because relevant statements made in judicial proceedings are qualifiedly privileged and cannot form the basis of a libel action.
The application is denied.
BOUTALL, J., adheres to his original opinion.
NOTES
[1] C.C.P. arts. 1038 and 1061 read as follows:

Art. 1038. "The court may order the separate trial of the principal and incidental actions, either on exceptions or on the merits; and after adjudicating the action first tried, shall retain jurisdiction for the adjudication of the order.
"When the principal and incidental actions are tried separately, the court may render and sign separate judgments thereon. When in the interests of justice, the court may withhold the signing of the judgment on the action first tried until the signing of the judgment on the order."
Art. 1061. "The defendant in the principal action may assert in a reconventional demand any action which he may have against the plaintiff in the principal action, even if these two parties are domiciled in the same parish and regardless of connexity between the principal and reconventional demands."
[2] See 52 Am.Jur.2d, Malicious Prosecution, § 29 (1970).
[3] See Waldo v. Morrison, 220 La. 1006, 58 So.2d 210 (1952); 50 Am.Jur.2d, Libel and Slander, § 231 (1970); 32 A.L.R.2d 418.
[4] See Central Improvement & Contracting Co. v. Grasser Contracting Co., 119 La. 263, 44 So. 10 (1907); 50 Am.Jur.2d, Libel and Slander, §§ 390-391 (1970); 53 C.J.S. Libel and Slander § 156 (1948).
[5] See Carnes v. Atkins Bros., Co., 123 La. 26, 48 So. 572 (1909).