BOLIN, Judge.
This is an action for damages for the alleged wrongful repossession of an automobile. From judgment sustaining an exception of no cause or right of action plaintiff appeals. We affirm the judgment.
The petition was filed October 6, 1970, and the answer on October 20, 1970. Attached to the answer was a signed Extension Agreement which was entered into between plaintiff and a representative of defendant corporation on August 20, 1970, providing as follows:
“Whereas, the Shreveport Auto Finance Corporation is the holder and owner of certain notes of date 6-18-70 secured by a chattel mortgage on the following property: 1964 Chev 2 Dr. Motor 41447-S-290816
And:
Now, therefore, in consideration of an extension of time of 30 days from this date within which to make payment of said notes I have delivered to the Shreveport Auto Finance Corporation the above described property.
"It is agreed and understood that the Shreveport Auto Finance Corporation will not bring suit against me during the time of this extension. It is further agreed that in the event said notes should remain unpaid at the expiration of said extension of time, the Shreveport Auto Finance Corporation becomes the owner of the above described property and this instrument will serve as a bill, of sale to same, provided they are willing to take the property in settlement of the above note.
“The above extension agreement does not in any way affect the rights of the Shreveport Auto Finance Corporation to resort to legal proceedings against me to collect the above mentioned note, together with all court costs, attorneys’ fees and other expenses provided for in said note and mortgage.
“This agreement entered into between the undersigned on this the 20th day of Aug. 1970.” (Emphasis ours)
Nearly three years later, on April 8, 1973, a stipulation of facts, signed by attorneys for both parties, was filed, in which it was agreed that on June 18, 1970, Willie Wright purchased from Esquire Motors, Inc., of Shreveport, Louisiana, a used 1964 Chevrolet; that plaintiff signed a note payable to Esquire Motors, Inc., and *19 by them endorsed to Shreveport Auto Finance Corporation, in the amount of $1,271.16, which represented the balance due on the car; that this note was payable in 18 monthly installments of $70.62 each beginning July 18,1970.
It was further stipulated that on August 18, 1970, the owner reported the car was stolen, but later the same day it was located. At plaintiff’s request the automobile was picked up by Shreveport Auto Finance Corporation and delivered to the latter’s lot for the purpose of having an estimate made for repairs.
Plaintiff admits in the stipulation that neither the July nor the August payment Was made. On August 20, 1970 plaintiff and defendant finance company discussed this failure to make payments and the extension agreement, quoted supra, was signed, under which plaintiff was granted 30 days to bring the account up to date.
The parties further stipulated that plaintiff at no time made any payments on the car, and on September 22, 1970, Shreveport Auto Finance proceeded in accordance with the terms of the extension agreement and placed the car in its used car inventory and subsequently resold the car on October 7, 1970.
The record fails to reveal where the car was located during the period from August 20, 1970, when the. extension agreement was signed, and the date of the filing of the petition on October 6, 1970. However, the inference is clear from reading the agreement that plaintiff never regained possession of the vehicle during that interim and that it remained in the actual physical possession of defendant until it was sold.
The question presented is whether, under the extension agreement, defendant was entitled to keep the car and offer it for sale or was it necessary for defendant to proceed by judicial process to enforce its mortgage and collect its note.
Plaintiff contends the “extension agreement”, under which defendant claimed ownership of the car, was in the nature of a conditional sale and thus illegal in this state; that defendant has attempted to do, by indirection,' that which is clearly illegal in that it has attempted to evade Louisiana’s prohibition of extrajudicial foreclosure and conditional sale.
Plaintiff has cited three cases in support of his claim for damages: Jackson v. Golson (La.App.2d Cir. 1956) 91 So.2d 394; Baron v. Phelan (1816) 4 Mart. (O.S.) 88; and Watson v. James (1860) 15 La.Ann. 386. We have examined each of the foregoing cases and find them inapposite to the issue before us.
Defendant cites Motors Securities Company, Inc. v. Crawford (La.App.2d Cir. 1955), 84 So.2d 303, involving a release of an automobile to the mortgagee-finance company. Although in that case the finance company was unsuccessful in its attempt to obtain a deficiency judgment against defendant purchaser, nevertheless the court held that the surrender of the automobile in consideration of a release of defendant’s indebtedness on the chattel mortgage note served to vest title to the mortgaged property in plaintiff.
In order to decide whether plaintiff has a right to maintain this action it is necessary to determine the nature and effect of the agreement which he voluntarily signed and in accordance with which defendant acted.
There is no allegation in the petition that this was an invalid agreement or that plaintiff ever tendered any of the payments on the car. Further, the only wrongful act alleged was the “wrongful detention and conversion” of the automobile. The answer and stipulation controvert this allegation since plaintiff admits his signature on the extension agreement and that he voluntarily signed it. Further, in this agreement plaintiff declares that “in consideration of an extension of time of 30 days from this day within which to *20 make payment of said notes I have delivered to the Shreveport Auto Finance Corporation the above described property.” [The vehicle involved in this controversy.]
Louisiana Civil Code Articles 2021, 2043, and 2471 provide:
Art. 2021.
“Conditional obligations are such as are made to depend on an uncertain event. If the obligation is not to' take effect until the event happen, it is a suspensive condition; . . . ” (Emphasis added)
Art. 2043.
“The obligation contracted on a suspen-sive condition, is that which depends, either on a future and uncertain event, or on an event which has actually taken place, without its being yet known to the parties.
“In the former case, the obligation can not be executed till after the event; in the latter, the obligation has its effect from the day on which it was contracted, but it can not be enforced until the event be known.”
Art. 2471.
“A sale, made with a suspensive condition, does not transfer the property to the buyer, until the fulfillment of the condition. * * * ”
For a discussion of the above-cited articles see Zemurray v. Boe, 235 La. 623, 105 So.2d 243 (1958).
From examination of the underlined portion of the extension agreement, quoted supra, it is obvious that plaintiff contracted to sell the car and to divest himself of ownership of the vehicle upon the happening of the suspensive condition upon which the contract was founded, i. e., the nonpayment of the mortgage notes on or before September 20, 1970.
After the time for performance on the part of plaintiff had expired without payment of the amounts due, the agreement that the “Shreveport Auto Finance Corporation becomes the owner of the above described property and this instrument will serve as a bill of sale to same, provided they are willing to take the property in settlement of the above note” ripened into a sale. See 34 La.L.Rev. 1017.
Under all the circumstances of this particular case, we find defendant was the owner of the automobile made the basis of this suit. Since no objection is made to the form of the proceeding, the judgment sustaining the exception of no right or no cause of action is affirmed at plaintiff’s cost.