DREW, J.
 

 11 George Cummings is the President, CEO, and Chairman of the Board of Progressive Bank and Progressive Bancorp. Progressive Bank is a subsidiary of Progressive Bancorp, together referred to as “the Bank.” Joe Doughty was employed by the bank as President of its Franklin Parish Division.
 

 Doughty filed a lawsuit for defamation and malicious prosecution against Cummings and the Bank on June 13, 2008. In this lawsuit, Doughty alleged the following:
 

 • In August or September of 2002, he learned that a bookkeeper for Abby Lines, a major customer of the Bank, had been fired and was under investigation for theft. He reported this to Cummings. When he learned in October that Abby Lines had over $200,000 in uncollected charge-back invoices, he reported this to Cummings.
 

 • Cummings instructed the Bank to advance over $523,000 to purchase invoices from Abby Lines in order to cover overdrafts and give Abby Lines a positive balance in its checking account. When Cummings entered the invoices in the system on November 5, 2002, the Bank learned that most of the invoices were either unsupported or duplicated. Doughty was asked by Cummings to resign two days later.
 

 • On November 27, 2002, Cummings received a preliminary analysis of the account which showed that Abby Lines had submitted duplicate and unsupported invoices in excess of $500,000 throughout the history of the relationship, in addition to the $523,000 advance that Cummings had authorized. Nothing in the analysis suggested that Doughty had diverted any money or received financial gain from the account.
 

 • At the beginning of 2003, Cummings made a claim on the Bank’s D & O Liability Bond. The local agent told Cummings that the bond would not pay for the loss unless the Bank linked the loss to dishonesty by a bank employee. Cummings then told the agent that he could substantiate that task and implicated Doughty to be in
 
 *582
 
 collusion in a fraud scheme with Abby Lines. Cummings and the Bank also made federal authorities and bank regulators aware of their accusations of fraud and defalcation by Doughty.
 

 12* On June 29, 2006, Doughty was indicted in federal court on charges of bank fraud. On April 1, 2008, these charges were dismissed.
 

 Cummings and the Bank raised the exceptions of no cause of action and prescription. They contended
 
 inter alia
 
 that the claims
 
 for
 
 malicious prosecution and defamation which were premised upon statements allegedly made to federal authorities and bank regulators were barred by the safe harbor provision found in the An-nunzio-Wylie Anti-Money Laundering Act (“Act”), codified at 31 U.S.C. § 5318, and related federal regulations. They also contended that the defamation claims were prescribed on the face of the petition.
 

 The trial
 
 court
 
 denied the exceptions. Cummings and the Bank sought supervisory relief with this court concerning the applicability of the safe harbor provision to claims of malicious prosecution and defamation and prescription of the defamation claims. This court granted their writ application and placed the matter on the appellate calendar.
 

 DISCUSSION
 

 Exception of no cause of action
 

 A peremptory exception of no cause of
 
 action
 
 questions whether the law extends a remedy to anyone under the factual allegations of the petition.
 
 Birdsong v. Hirsch Memorial Coliseum,
 
 42,316 (La.App.2d Cir.8/22/07), 963 So.2d 1095. The exception is triable on the face of the petition, and the facts pled are to be accepted as true.
 
 Industrial Companies, Inc. v. Durbin,
 
 2002-0665 (La.1/28/03), 837 So.2d 1207. In reviewing a trial court’s ruling sustaining an exception of no cause of action, this court should subject the case to
 
 de novo
 
 review because the exception raises a question ofjjlaw, and the lower court’s decision is based only on the sufficiency of the petition.
 
 Cleco Corp. v. Johnson,
 
 2001-0175 (La.9/18/01), 795 So.2d 302.
 

 Cummings and the Bank contend that the safe harbor provision of the Act bars Doughty’s defamation and malicious prosecution claims that are based upon the allegation that they “made federal authorities and bank regulators aware of their accusations of fraud and defalcation.”
 

 The safe harbor provision of the Act is found in 31 U.S.C. § 5318(g)(3)(A), which reads:
 

 (g) Reporting of suspicious transactions.—
 

 [[Image here]]
 

 (3) Liability for disclosures. — •
 

 (A) In general. — Any financial institution that makes a voluntary disclosure of any possible violation of law or regulation to a government agency or makes a disclosure pursuant to this subsection or any other authority, and any director, officer, employee, or agent of such institution who makes, or requires another to make any such disclosure, shall not be liable to any person under any law or regulation of the United States, any constitution, law, or regulation of any State or political subdivision of any State, or under any contract or other legally enforceable agreement (including any arbitration agreement), for such disclosure or for any failure to provide notice of such disclosure to the person who is the subject of such disclosure or any other person identified in the disclosure.
 

 Cummings and the Bank also note the corresponding federal regulation, 12 C.F.R. § 353.3(h), which states:
 

 
 *583
 
 The safe harbor provisions of 31 U.S.C. § 5318(g), which exempts any bank that makes a disclosure of any possible violation of law or regulation from liability under any law or regulation of the United States, or any constitution, law or regulation of any state or political subdivision, cover all reports of suspected or known criminal violations and suspicious activities to law enforcement and financial institution supervisory authorities, including supporting documentation, regardless of whether such reports are filed pursuant to this part or are filed on a voluntary basis.
 

 |4We recognize that there is a split among the federal circuits as to whether the safe harbor provision has a “good faith” requirement. In Lopez
 
 v. First Union National Bank of Florida,
 
 129 F.3d 1186 (11th Cir.1997), the court took the position that the safe harbor provision protects a bank when it has a good faith suspicion that a law or regulation may have been violated. This position was rejected in
 
 Lee v. Bankers Trust Company,
 
 166 F.3d 540 (2nd Cir.1999), where the court concluded that the protection of the safe harbor provision is not limited to disclosures based on a good faith belief that a violation had occurred.
 
 [1]
 

 See also Stoutt v. Banco Popular de Puerto Rico,
 
 320 F.3d 26 (1st Cir.2003), where the court stated that careless or malicious reporting is possible under the safe harbor provision.
 

 Doughty argues that the safe harbor provision does not provide immunity in this instance because any disclosures were not made in good faith as there was never a “possible” violation of law to report. In support of his argument, Doughty cites an Arkansas Supreme Court case,
 
 Bank of Eureka Springs v. Evans,
 
 353 Ark. 438, 109 S.W.3d 672 (2003). Although the court in
 
 Evans
 
 did not specifically state that the safe harbor provision required “good faith,” for all practical purposes that was what it did as it held that the safe harbor provision did not protect the bank when its conduct was malicious and based on information that the bank knew was false. The Arkansas court reasoned that because the Act requires a “possible” violation of law before a financial institution can claim protection of its safe harbor | r,provisions, the safe harbor provision did not apply when the bank knew there was no possible violation of the law but had acted maliciously and willfully to have a bank customer arrested and brought to trial on charges it knew were false.
 

 Doughty alleges that Cummings implicated him when he learned that the bond would not be paid unless the loss was linked to employee dishonesty. This was done despite there being nothing in the preliminary analysis that suggested that Doughty diverted any money or received financial gain. As such, Cummings and the Bank were not reporting a possible violation, but were merely seeking financial benefit. The trial court did not err in denying the exception of no cause of action.
 

 Prescription
 

 Applicants contend that the trial court erred in denying the exception of prescription as to the claims of defamation. Claims for defamation are delictual in nature and are subject to La. C.C. art. 3492’s one-year prescriptive period, which commences to run from the day injury or damage is sustained.
 
 Clark v. Wilcox,
 
 2004-2254 (La.App. 1st Cir.12/22/05), 928
 
 *584
 
 So.2d 104,
 
 writ denied,
 
 2006-0185 (La.6/2/06), 929 So.2d 1252.
 

 The defamation claim is prescribed on the face of the petition. The statement to the insurance agent was made in 2003, and although the petition does not announce precisely when applicants made federal authorities and bank regulators aware of their accusations of fraud and defalcation by Doughty, presumably this occurred well prior to the 2006 indictment.
 

 | f,Doughty contends that prescription on the defamation claims was interrupted during the pendency of the federal criminal proceedings. An action for defamation arising out of allegations made in judicial proceedings and against a party to those proceedings cannot be brought until those proceedings are terminated.
 
 Waguespack v. Judge,
 
 04-137 (La.App. 5th Cir. 6/29/04), 877 So.2d 1090;
 
 Nolan v. Jefferson Parish Hospital Service District No. 2,
 
 01-175 (La.App. 5th Cir. 6/27/01), 790 So.2d 725. However, that principle is not applicable in this matter as the statements were not made in a judicial proceeding, but prior to any proceeding.
 

 The trial court found that the indictment had the effect of republishing the defamatory statements. Even if we accept this premise, we note that the suit was filed more than one year after the indictment was handed down. Accordingly, Doughty’s defamation claims have prescribed, and the trial court erred in concluding otherwise.
 

 CONCLUSION
 

 We grant the writ in part and reverse the trial court’s denial of the exception of prescription as to the defamation claims. In all other respects, the writ is denied.
 

 WRIT GRANTED IN PART AND DENIED IN PART.
 

 [1]
 

 . In
 
 Lee,
 
 the court noted that a review of the Act’s legislative history showed that an earlier draft of the safe harbor provision included an explicit good faith requirement for statements made in a suspicious activity report, but this requirement was dropped in later versions of the bill and was not included in the bill ultimately enacted by Congress.