# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

# 10-1470

**JUDY LYONS**

**VERSUS**

**ANN KNIGHT, MARK KNIGHT, KELLY KNIGHT, AND KNIGHT OIL TOOLS, INC.**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2010-0734 "L"
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**********

# ELIZABETH A. PICKETT
# JUDGE

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and J. David Painter, Judges.

**REVERSED AND REMANDED.**

**Alan K. Breaud**
**Timothy W. Basden**
**Breaud & Meyers**
**P. O. Drawer 3448**
**Lafayette, LA 70502**
**(337) 266-2200**
**Counsel for Plaintiff-Appellant:**
**Judy Lyons**

**Cliffe E. Laborde III**
**Cliff A. Lacour**
**One Petroleum Center, Suite 200**
**1001 Pinhook Rd.**
**Lafayette, LA 70503**
**(337) 237-7000**
**Counsel for Defendants-Appellees:**
**Ann Knight**
**Mark Knight**
**Kelly Knight Sobiesk**
**Knight Oil Tools**

**PICKETT, Judge.**

The appellant, Judy Lyons, appeals the judgment of the trial court dismissing her claims against the defendants Ann Knight, Mark Knight, Kelly Knight Sobiesk, and Knight Oil Tools, as prescribed and as an exercise of the defendants' rights pursuant to La.Code Civ.P. art 971, and awarding attorney's fees to the defendants.

## STATEMENT OF THE CASE

Judy Lyons was contracted by Ann Knight and Kelly Knight Sobiesk to do interior design work in their primary homes and other residences. This work involved making home improvements and purchasing furnishings and accessories for their homes. Rather than pay Ms. Lyons directly, they instructed her to submit invoices to Knight Oil Tools, Inc., a family corporation that had previously been run by Mrs. Knight's late husband but was now managed by her son, Mark Knight. In order to keep Mark Knight from knowing that personal work for Mrs. Knight and Mrs. Sobiesk was being paid for by the Knight Oil Tools, Mrs. Knight instructed Ms. Lyons to alter invoices so that they looked like business expenses. Ms. Lyons would turn in invoices to the company's accounts receivable department, and they would give her an unsigned check for Mrs. Knight to sign. At some point, Ms. Lyons, with or without the permission of Mrs. Knight, began signing Mrs. Knight's name on the checks. While there is no dispute that Ms. Lyons signed some of the checks, there is no claim that Ms. Lyons did not do the work for which the checks were issued, though there is some dispute about the amounts she charged. Between 2002 and 2005, Ms. Lyons submitted invoices totaling over $600,000.00 for goods and services.

1

In 2005, Mark Knight discovered the payments made to Ms. Lyons. He initiated a criminal complaint with the Lafayette Police Department, alleging that Ms. Lyons had forged signatures on thirty-five checks issued by Knight Oil Tools. In addition to the complaint from Mark Knight, Mrs. Sobiesk swore out an affidavit stating that she had personally paid for furniture invoiced by Ms. Lyons to Knight Oil tools. She also stated that Ms. Lyons had received payments for goods that she never delivered. In addition, Mrs. Knight signed an affidavit stating that Ms. Lyons had forged her signature on thirty-six checks issued by Knight Oil Tools. Based on these allegations, the Lafayette City Police arrested Ms. Lyons on September 13, 2005, and charged her with thirty-two counts of forgery and thirty-two counts of theft by fraud.

The criminal prosecution of Ms. Lyons went to trial on August 25, 2009. At the close of the prosecution's case, the trial court entered a directed verdict of acquittal. It relied on the fact that Mrs. Knight, in her trial testimony, could not identify any checks that she did not sign. Also, the trial court found that there was no intent to defraud as required for a criminal conviction for forgery.

On February 2, 2010, Ms. Lyons filed a Petition for Damages against Mrs. Knight, Mark Knight, Mrs. Sobiesk, and Knight Oil Tools, Inc., alleging malicious prosecution and defamation. In response, the defendants filed an Exception of Prescription and Special Motion to Strike. A hearing on the exception and the motion to strike were held on April 26, 2010. At the hearing, the trial court indicated that it would grant the exception of prescription as it related to the claims of defamation. The court found that the statements Ms. Lyons claimed were defamatory were made in 2005, and the one-year prescriptive period had clearly run. The trial court took the issue of the special motion to strike under La.Code Civ.P. art. 971 under advisement.

2

On May 11, 2010, the court issued written reasons granting the motion to strike. In a judgment rendered on August 23, 2010, the trial court signed a judgment dismissing Ms. Lyons' claims of defamation on the basis of prescription; striking the claims for malicious prosecution pursuant to La.Code Civ.P. art. 971; and awarding attorneys' fees pursuant to La.Code Civ.P. art. 971(B) in the amount of $10,000.00.

Ms. Lyons appeals this judgment.

## ASSIGNMENT OF ERROR

Ms. Lyons asserts two assignments of error:

1.    The trial court erred in granting the Special Motion to Strike, dismissing the claim for malicious prosecution, and awarding attorneys' fees and costs to the defendants.

2.    The trial court erred in granting the Exception of Prescription and dismissing the defamation claims.

## DISCUSSION

### Are the Defamation Claims Prescribed?

In her second assignment of error, Ms. Lyons argues that the trial court erred in granting the peremptory exception of prescription. An exception of prescription is a peremptory exception. La.Code Civ.P. art. 927. Defamation is a delictual action subject to a one-year liberative prescription. La.Civ.Code art. 3492. Here, the claims for defamation were based on the information provided by Mark Knight to the Lafayette Police Department in August and September 2005, an affidavit executed by Mrs. Sobiesk on September 7, 2005, and an affidavit executed by Mrs. Knight on September 8, 2005. Mrs. Lyons filed her petition for damages on February 2, 2010. Thus, on the face of the pleadings, the claims for defamation have prescribed. The supreme court discussed the burden of proof for prescription claims in *Carter v. Haygood*, 04-646, pp. 8-9 (La. 1/19/05), 892 So.2d 1261, 1267:

3

Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. *Campo v. Correa*, 01-2707, p. 7 (La.6/21/02), 828 So.2d 502, 508. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. *Campo*, 01-2702 at p. 7, 828 So.2d at 508; *Williams v. Sewerage & Water Bd. of New Orleans*, 611 So.2d 1383, 1386 (La.1993). If evidence is introduced at the hearing on the peremptory exception of prescription, the district court's findings of fact are reviewed under the manifest error-clearly wrong standard of review. *Stobart v. State, Through DOTD*, 617 So.2d 880, 882 (La.1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.* at 882-83.

As Ms. Lyons' claim for defamation was prescribed on the face of her petition, the burden shifted to her to show that her defamation claims did not prescribe. To satisfy this burden, Ms. Lyons argued in the trial court that the prescriptive period was suspended during the pendency of the criminal action initiated by the defamatory statements made by the defendants. The trial court found that the criminal action against Ms. Lyons did not suspend prescription, and dismissed her defamation claims.

Louisiana courts have consistently held that an action for defamation arising out of allegations made in judicial proceedings and against a party to those proceedings cannot be brought until those proceedings are terminated. *Loew's, Inc. v. Don George, Inc.*, 237 La. 132, 110 So.2d 553, 561 (1959)*; Nolan v. Jefferson Parish Hosp. Serv. Dist. No 2.*, 01-0175, p. 8 (La.App. 5 Cir. 6/27/01), 790 So.2d 725, 730; *Ballex v. Naccari*, 95-0057, p. 2 (La.App. 4 Cir. 6/7/95), 657 So.2d 511, 512; *Grant v. Politz*, 575 So.2d 915, 917 (La.App. 2 Cir.1991); *Thomas v. Mobley*, 118 So.2d 476, 483 (La.App. 1 Cir.1960). *See also* Justice Watson's concurrence in *Union Serv. & Maint. Co., Inc. v. Powell*, 393 So.2d 94, 99 (La.1980). This rule allows the underlying litigation to proceed in an orderly manner, without the issue of defamation present. *Ortiz v. Barriffe*, 523 So.2d 896, 898 (La.App. 4 Cir.),*writ denied*, 531 So.2d 273 (La.1988); *Calvert v. Simon*, 311 So.2d 13, 17 (La.App. 4 Cir.1975).

*Simpson v. Perry*, 03-116, p. 3 (La.App. 1 Cir. 7/14/04), 887 So.2d 14, 16 (footnote omitted).

In this case, the statements which Ms. Lyons claims are defamatory were made by the defendants to law enforcement officers for the purpose of initiating a criminal prosecution. These statements became the basis of a criminal prosecution filed by the state against Ms. Lyons. While acknowledging that prescription would be suspended if the statements were made during a civil case, the defendants argue that the statements were not made in connection with a judicial proceeding, or that the defendants were not a party to the criminal prosecution, and thus prescription was not suspended or interrupted. In support of their position, they cite *Doughty v. Cummings*, 44,812, (La.App. 2 Cir. 12/30/09), 28 So.3d 580, *writ denied*, 10-251 (La. 4/9/10), 31 So.3d 394.

In *Doughty*, the plaintiff, a former bank employee, sued his former employer bank and its president for defamation and malicious prosecution. The president of the bank had reported to an insurance adjuster and later federal authorities that the plaintiff had colluded in a fraud scheme with a bank client's employee in 2003. The plaintiff was indicted in 2006, but the charges were dismissed on April 1, 2008. The plaintiff filed his suit on June 13, 2008. The second circuit held that the claim for defamation had prescribed, stating:

> The defamation claim is prescribed on the face of the petition. The statement to the insurance agent was made in 2003, and although the petition does not announce precisely when applicants made federal authorities and bank regulators aware of their accusations of fraud and defalcation by Doughty, presumably this occurred well prior to the 2006 indictment.
>
> Doughty contends that prescription on the defamation claims was interrupted during the pendency of the federal criminal proceedings. An action for defamation arising out of allegations made in judicial proceedings and against a party to those proceedings cannot be brought until those proceedings are terminated. *Waguespack v. Judge*, 04-137 (La.App. 5th Cir. 6/29/04), 877 So.2d 1090; *Nolan v. Jefferson Parish Hospital Service District No. 2*, 01-175 (La.App. 5th Cir. 6/27/01), 790

5

So.2d 725. However, that principle is not applicable in this matter as the statements were not made in a judicial proceeding, but prior to any proceeding.

> The trial court found that the indictment had the effect of republishing the defamatory statements. Even if we accept this premise, we note that the suit was filed more than one year after the indictment was handed down. Accordingly, Doughty's defamation claims have prescribed, and the trial court erred in concluding otherwise.

*Id.* at 584.

In *Union Service & Maintenance Co., Inc. v. Powell*, 393 So.2d 94, 98-100

(La.1980)(footnotes omitted), Justice Watson penned a concurrence that explained

the state of the law as it relates to defamation in a judicial proceeding:

> There is a conflict in the circuits on the question of whether a party allegedly libeled in the pleadings of a lawsuit can sue for that libel prior to termination of the suit. *Marionneaux v. King*, 331 So.2d 180 (La.App. 1 Cir. 1976); *Coleman v. Kroger Co.*, 371 So.2d 1186 (La.App. 1 Cir. 1979), writ refused 372 So.2d 1041; *Lees v. Smith*, 363 So.2d 974 (La.App. 3 Cir. 1978); *Calvert v. Simon*, 311 So.2d 13 (La.App. 2 Cir. 1975); and *Viera v. Kwik Home Services, Inc.*, 266 So.2d 732 (La.App. 4 Cir. 1972), writ refused, judgment not final, 268 So.2d 258.

> Because LSA-C.C.P. art. 1061 does not require connexity between the principal and reconventional demands, *Viera* decided that a libel claim can be brought by reconventional demand in the suit containing the alleged libel. *Viera* is not without precedent. *Sabine Tram Co. v. Jurgens*, 143 La. 1092, 79 So. 872 (1918) allowed a reconventional demand for libel in a suit alleging fraud without discussion of the termination requirement. There the question of fraud was apparently decided by judgments in separate suits before the reconventional demand was considered. *See also Pelletier v. Pugh*, 16 La.App. 693, 132 So. 769 (1931) and *Story v. Martin*, 217 So.2d 758 (La.App. 4 Cir. 1969). However, most of the Louisiana authorities state that the suit alleged to contain the libel must be brought to a conclusion before damages can be claimed by a party to the suit. *See, for example*, *Manuel v. Deshotels*, 160 La. 652, 107 So.2d 478 (1926); *W. B. Thompson & Co. v. Gosserand*, 128 La. 1029, 55 So. 663 (1911); *Loew's, Incorporated v. Don George, Inc.*, 237 La. 132, 110 So.2d 553 (1959); *Marionneaux v. King,* supra; *Coleman v. Kroger Co.,* supra; *Lees v. Smith,* supra; *Calvert v. Simon,* supra. In a per curiam denial of rehearing, the *Viera* court indicated that its ruling does not discourage

valid claims because relevant statements in judicial proceedings ". . . cannot form the basis of a libel action." 266 So.2d 737.

Every other jurisdiction in the United States recognizes an absolute privilege for relevant defamatory matter published in judicial pleadings when the court has jurisdiction of the suit. The privilege allows prospective litigants access to courts of justice with no fear of a counterclaim for libel. See 38 A.L.R.3d 272, § 3; 50 Am.Jur.2d § 238; Prosser Torts 4th Ed. pp. 777-781; and 53 C.J.S. § 104.

Some Louisiana cases indicate an absolute privilege for pertinent matters published in a judicial proceeding by one of the parties but these are in the minority. *Gardemal v. McWilliams*, 43 La.Ann. 454, 9 So. 106 (1891) is an example of the genre and shows common law influences. This view was rejected in later cases: *Lescale v. Joseph Schwartz Co.*, 116 La. 293, 40 So. 708 (1906) specifically repudiated the idea that material matters are necessarily privileged. *Cotonio v. Guglielmo*, 176 La. 421, 146 So. 11 (1933) points out that: ". . . litigants must be careful to see that they have probable cause." 146 So. 14.

The Louisiana rule is unique. In Louisiana, alone, relevant written allegations in judicial proceedings can form the basis for a libel action, if false, malicious and made without probable cause. *Gosserand v. Gumbel*, 154 La. 537, 97 So. 852 (1923); *Oakes v. Alexander*, 135 So.2d 513 (La.App. 2 Cir. 1961), *writ denied*; *Wimbish v. Hamilton*, 47 La.Ann. 246, 16 So. 856 (1895); *Sunseri v. Shapiro*, 138 So.2d 661 (La.App. 4 Cir. 1962); *Waldo v. Morrison*, 220 La. 1006, 58 So.2d 210 (1952). Allegations may be material but false and actionable. *Lescale,* supra; *Cotonio,* supra.

The distinction drawn in *Viera* between suits for malicious prosecution and those for libel is unsound. See *Giordano v. Tullier*, 139 So.2d 15 (La.App. 4 Cir. 1962); the comment by Professor Wex S. Malone at 15 La.Law Rev. 314; *Acme Stores, Inc. v. Better Business Bureau*, 225 La. 824, 74 So.2d 43 (1954); and 12 Stone-La. Tort Doctrine, p. 238. Both actions are based on fault produced damage under Civil Code art. 2315. There is little to distinguish them.

Opinions prior to *Viera* had noted the appeal of the arguments favoring simultaneous trial of the merits and contingent libel issues. *Robinson Mercantile Co. v. Freeman*, 172 So. 797 (La.App. 1 Cir. 1937). However, Judge Boutall's dissent in *Viera* states the better view: ". . . it is an essential ingredient to the cause of action that there be a termination of the case in which the allegedly libelous statements appear. . .". 266 So.2d 736.

Well summarized in *Calvert v. Simon,* supra, is the reason for the rule:

"Louisiana law permits recovery by a party damaged by libelous statements made without probable cause and with malice by another party in a judicial proceeding, but consistent with orderly procedure and the concept of unhampered expression in the course of litigation, requires the party claiming such damage to await the determination of the original proceeding. Although the outcome of the original proceeding may not necessarily determine the issue of whether a party thereto can subsequently recover for libelous statement made therein, in most cases the outcome of the original suit will have a strong bearing on determination of that issue." 311 So.2d 17.

Allegations of fraud may be proven at trial, incidentally deciding the question of defamation. See, for example, *Russo v. Kelly*, 228 So.2d 736 (La.App. 4 Cir. 1969), *writ denied*, 255 La. 472, 231 So.2d 392. *Compare Dunn v. Southern Ins. Co.*, 116 La. 431, 40 So. 786 (1906). Premature trial of such thorny issues should be avoided. It may develop that trial is never necessary. The truth of defamatory statements is a statutory defense. LSA-R.S. 13:3602.

The Louisiana Constitution of 1974 guarantees redress for defamation injury in Art. 1, § 22:

"All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights."

Louisiana has an exceptional approach to defamation in judicial pleadings. The protection extended to a libeled party is broader than that in any other jurisdiction. The only limitation is termination of the suit containing the libel, and this requirement only prevails when the injured person is also a party to the suit. *Monier v. Fontenot*, 165 So. 481 (La.App. 1 Cir. 1936); *Lescale v. Joseph Schwartz Co.*, 116 La. 293, 40 So. 708 (1906). A party to a suit can insist that it be brought to trial, move for summary judgment or otherwise protect himself against delay. It is only when the complainant is a party to the proceeding and has ". . . a voice in bringing it to its termination," that a defamation action must await that termination. *Monier v. Fontenot*, 165 So. 481 at 483.

*Viera* erred not in allowing the demand by reconvention but in allowing it at all prior to termination of the suit. The purpose of requiring an end to the initial litigation is obvious. A trier of fact who is trying to resolve conflicting claims should not have the further burden of deciding at the same time whether defamation is involved in the pleadings of one party or the other.

Those who labor daily in the law often do not realize the impact of a suit on the average layman. John Citizen when named a defendant usually reacts with a desire to sue for the insult. However, by the conclusion of trial, his temper has generally cooled and he is happy to be free of the court system. Encouraging a countersuit for defamation in each and every lawsuit discourages legitimate claims and burdens the courts unnecessarily.

We note that defamation is only actionable if it is made in affidavits or in pleadings before the court. Louisiana Revised Statutes 14:50(2) affords a witness in a judicial proceeding absolute immunity from prosecution for defamation where the statement is "reasonably believed by the witness to be relevant to the matter in controversy." In the instant case, though, the testimony of the defendants at trial, especially Mrs. Knight, conflicted in part with her original affidavit. These inconsistencies led, in part, to Ms. Lyons' acquittal. Ms. Lyons is suing for the alleged libel contained in the affidavits of the defendants which were confected for the purpose of initiating a criminal prosecution.

We find that prescription was suspended during the pendency of the criminal trial against Ms. Lyons. The defendants published the allegedly defamatory statements in affidavits directed to the Lafayette Police Department, which affidavits resulted in Ms. Lyons' criminal prosecution. To the extent that the second circuit in *Doughty* relied on the fact that the statements made to an insurance adjuster outside of the context of a judicial proceeding, we find that case distinguishable. The trial court erred as a matter of law in finding the claims for defamation prescribed, and the defamation claims against the defendants are reinstated.

**Are the provisions of La.Code Civ.P. art. 971 applicable?**

Louisiana Code of Civil Procedure Article 971 states:

A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech

under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

(3) If the court determines that the plaintiff has established a probability of success on the claim, that determination shall be admissible in evidence at any later stage of the proceeding.

B. In any action subject to Paragraph A of this Article, a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs.

C. The special motion may be filed within sixty days of service of the petition, or in the court's discretion, at any later time upon terms the court deems proper. The motion shall be noticed for hearing not more than thirty days after service unless the docket conditions of the court require a later hearing.

D. All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this Article. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. Notwithstanding the provisions of this Paragraph, the court, on noticed motion and for good cause shown, may order that specified discovery be conducted.

E. This Article shall not apply to any enforcement action brought on behalf of the state of Louisiana by the attorney general, district attorney, or city attorney acting as a public prosecutor.

F. As used in this Article, the following terms shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:

(1) "Act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" includes but is not limited to:

(a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.

(b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.

(c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.

(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

(2) "Petition" includes either a petition or a reconventional demand.

(3) "Plaintiff" includes either a plaintiff or petitioner in a principal action or a plaintiff or petitioner in reconvention.

(4) "Defendant" includes either a defendant or respondent in a principal action or a defendant or respondent in reconvention.

"Because the granting of a special Motion to Strike Pursuant to La.Code Civ.P. art. 971 involves issues of law, we will conduct a *de novo* review of the trial court's application of the law." *Aymond v. Dupree*, 05-1248, p. 5 (La.App. 3 Cir. 4/12/06), 928 So.2d 721, 726, *writ denied*, 06-1729 (La.10/6/06), 938 So.2d 85.

The language of the article clearly states that the special motion to strike is applicable only to a petition or reconventional demand against a person "arising from any act of that person in furtherance of the person's right of petition or free speech . . . . in connection with a public issue[.]"  The article further clarifies the issue by defining an "[a]ct in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" in subsection F(1).  We note that the speech must be on a matter of "public concern." As noted by our supreme court in footnote six in *Kennedy v. Sheriff of East Baton Rouge*, 05-1418, p. 9 (La. 7/10/06), 935 So.2d 669, 677:

11

> The Supreme Court has described speech on matters of public concern as speech "relating to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). Whether speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the entire record. *Id.*, 461 U.S. at 147-148, 103 S.Ct. at 1690.

This case is not about any issue of public concern. It involves a person with whom a private corporation and private citizens had a business relationship allegedly failing to perform work or provide services in exchange for the money she received. In *Kennedy*, the employees of a fast food restaurant believed that a patron tried to pay with counterfeit currency, and the supreme court held that "the suspected distribution of counterfeit currency in the community is a matter of public concern, as it is an issue about which information is appropriate and needed, and in which the public, and particularly the business community, may reasonably be expected to have a legitimate interest." There is no similar public interest involved in this case. It is a private matter between private interests that does not implicate the public.

Similarly, *Darden v. Smith*, 03-1144 (La.App. 3 Cir. 6/30/04), 879 So.2d 390, *writ denied*, 04-1955 (La. 11/15/04), 887 So.2d 480, is distinguishable. In that case, the plaintiff alleging defamation was a public official, a police juror, and the statements at issue in the plaintiff's suit related to the decision-making process of the police jury.

We find that there is no public issue in this case as required for the special motion to strike under Article 971 to be applicable. We therefore reverse the judgment of the trial court striking Ms. Lyons' claims for malicious prosecution and awarding attorney's fees and costs.

## CONCLUSION

For the reasons assigned, the judgment of the trial court is reversed. The case is remanded for further proceedings consistent with this opinion. Costs are assessed to the defendants-appellees.

**REVERSED AND REMANDED.**